Matthew CHABAL, Jr.

v.

Ronald REAGAN, et al.

Civ. A. No. 85–1497.

United States District Court,
M.D. Pennsylvania.

April 10, 1986.

Clifford A. Riederf, Williamsport, Pa., for plaintiff.

Jeffrey S. Paulsen, Joanne Marchetta, Jerry Auerbach, Dept. of Justice, Washington, D.C., for defendants.

* Honorable E. Mac Troutman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The plaintiff's original complaint was filed on October 9, 1985. On March 19, 1986, the plain-

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.*

██ The above named plaintiff instituted this action claiming he had been wrongfully discharged from his position as United States Marshal for the Middle District of Pennsylvania. He seeks, *inter alia*, reinstatement to his former position. The plaintiff alleges in his amended complaint that his dismissal constitutes a violation of 28 U.S.C. § 561 (the statute authorizing presidential appointment of United States Marshals upon the advice and consent of the Senate) and the doctrine of separation of powers, an infringement of his liberty and property interests under the Due Process Clause of the Fifth Amendment, and a violation of his right to freedom of speech under the First Amendment.[1] He also contends that his dismissal and unsatisfactory performance rating violated 5 U.S.C. §§ 2301 and 2302 as prohibited personnel practices, thereby entitling him to the substantive and procedural protections of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq.* Pursuant to his claim under the CSRA, the plaintiff originally asked this Court to compel the Office of Special Counsel (OSC) of the Merit Systems Protection Board (MSPB) to conduct an investigation of his dismissal and the unsatisfactory annual performance appraisal he received on or about August 26, 1985. However, this aspect of the plaintiff's action has become moot since the initiation of this suit. The MSPB, of which the OSC serves as an investigative arm, has held that a United States Marshal is not an employee covered by the provisions of the CSRA. *See Matthew Chabal, Jr. v. Department of Justice, United States Marshals Service*, Initial Decisions Nos. PH07528610029 and PH34438510740, slip op., (MSPB 1985). Likewise, the OSC has held that "Presidentially appointed posi-

tiff filed a motion to amend his complaint. By stipulation, the defendants stated that they would not oppose the plaintiff's motion. The motion was therefore granted.

tions are not considered 'covered positions' as defined in the law regarding prohibited personnel practices," and, therefore, it lacks jurisdiction to investigate the plaintiff's complaints. (See Stipulation, Paper # 15, Exhibit "B"). If the plaintiff wishes to challenge these decisions, he may pursue his appellate remedies available with the proper Circuit Court of Appeals. This Court, however, lacks authority to grant plaintiff any relief as to this statutory aspect of his claim. Therefore, we must dismiss his statutory claim under the CSRA.

The defendants presently seek to have the remaining elements of the plaintiff's complaint dismissed pursuant to F.R.Civ.P. 12(b)(1) for lack of personal jurisdiction over defendants Tuttle, Morris and Twomey in their individual capacities and F.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. We shall first address the issues raised by the defendants' motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) since they will be dispositive of this matter.

The following principles guide us in our consideration of the defendants' motion: all well-pleaded allegations in the plaintiff's complaint must be accepted as true, the complaint should be construed liberally and in favor of the plaintiff, the complaint should not be dismissed unless it appears beyond doubt that no set of facts may be proven which would entitle the plaintiff to the relief requested, and finally, the issue is not whether the plaintiff will prevail, but rather whether he is entitled to submit evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Accepting all allegations in the plaintiff's complaint as true, the facts of this case are as follows: President Reagan, pursuant to the authority vested in him by 28 U.S.C. § 561, appointed the plaintiff United States Marshal for the Middle District of Pennsylvania in 1982 and the Senate confirmed the nomination. Defendant Morris, Director of the Marshal's Service, in April, 1985, re-

quested that the plaintiff resign. (Plaintiff's Complaint ¶¶ 27 and 28). The plaintiff was dismissed because he communicated to his superiors his belief that he was bound to follow the instructions and orders of the Federal Judges of the Middle District and that the Justice Department and the United States Bureau of Prisons were interfering with such instructions and orders. (Plaintiff's Complaint, ¶¶ 42–48).

The plaintiff claims that his dismissal was based upon false and misleading information, and that the unsatisfactory performance rating he received was similarly unjustified and false. (Plaintiff's Complaint, ¶ 40) He further alleges that his firing was based upon political and personal animus unrelated to his job performance. (Plaintiff's Complaint, ¶¶ 30–33).

## I. The Due Process Claims.

The first issue we address is whether the President of the United States may remove a United States Marshal at will and without cause prior to the expiration of his statutorily prescribed four-year term. The statute under which the President appointed the plaintiff provides:

(a) The President shall appoint, by and with the advice and consent of the Senate, a United States Marshal for each judicial district.

(b) Each marshal shall be appointed for a term of four years. On expiration of his term, a marshal shall continue to perform the duties of his office until his successor is appointed and qualifies, unless sooner removed by the President.

(c) . . .

28 U.S.C. § 561.

The statute makes no reference to "cause" in providing for the dismissal of a United States Marshal during his four-year term. However, in appropriate circumstances, such a requirement has been read into other statutes. *See e.g., Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958), and *Borders v. Reagan,* 518 F.Supp. 250 (D.D.C.1981). The Supreme Court, in the *Myers-Humphrey's-Wiener* trilogy of cases established the

principle that where there is a legitimate need for independence in the functioning of a government agency, commission, etc., the President lacks authority to remove at will those appointed to such bodies. *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926); *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); and *Wiener v. United States, supra.* Stated in another manner:

> Even though Congress has established an office, has the power to abolish it, sets its pay and prescribes a desirable duration for it, if that federal office performs purely executive functions, that is, if it is the eyes and arms of the President, then, consistent with the doctrine of separation of powers, the Congress may not restrict the President in removing the occupants of that office.

*Borders*, 518 F.Supp. at 261.

Many courts have adopted a process of "pigeonholing" such agencies or commissions into categories of "purely executive" or "quasi-legislative/quasi-judicial" arms of the government in determining whether the President possesses unfettered discretion to dismiss those appointed. The focus of this analysis remains the "character" of the office involved and its need for independence from executive control. As recognized by the Court in *Borders, supra*, the *Myers-Humphrey's-Wiener* trilogy prescribes the following analysis:

> First, the court should determine whether the statute creating the office was designed to ensure those serving in that office independence from executive direction and control. Once the court has determined that that was the design of Congress, and that such a design was legitimate, then the court should uphold congressional circumscription of presidential removal at will since the 'coercive

influence' of that power would 'threaten ... independence'.

518 F.Supp. at 262. The Ninth Circuit Court of Appeals addressed this same issue in *Martin v. Tobin*, 451 F.2d 1335 (9th Cir.1971), in a similar, if not identical, context. President Nixon removed Martin as United States Marshal for the Northern District of California prior to the expiration of his four-year term, and Martin brought a declaratory judgment action against his successor to determine the propriety of his discharge. The Ninth Circuit upheld the district court's dismissal of Martin's action pursuant to a summary judgment motion on the ground that a United States Marshal is a purely executive officer whom the President can remove at his pleasure. *Id.*

The plaintiff in this action argues that the Ninth Circuit's decision was premised upon Martin's failure "to make a showing of any duties which make him even a part-time member of the Judicial Branch", 451 F.2d at 1336, contending that in this case such a showing can be made. However, other courts which have addressed this issue, though admittedly in a different context, have uniformly held that the Marshal's Service exists exclusively as an arm of the Executive Branch despite the "special relationship" between the Service and the federal judiciary. *See, Pennsylvania Bureau of Correction v. United States Marshal's Service, et al.*, 474 U.S. ——, ——, fn. 1, 106 S.Ct. 355, 358, fn. 1, 88 L.Ed.2d 189, 193, fn. 1 (1985); *Garland v. Sullivan*, 737 F.2d 1283 (3d Cir.1984); and *Farley v. United States*, 139 F.Supp. 757, 134 Ct.Cl. 672 (1956). Further, based on our own analysis of the principles enunciated above in relation to this particular case, we also conclude Congress did not intend the Marshal's Service "to be independent of control, direction or interference from the President" by virtue of the Marshal's nature and function.[2] As recognized by the

---

2. We emphasize once again that we do not assume that Congress by its failure to specify anything in § 561 regarding removal of a Marshal during his unexpired term meant thereby to leave such decisions to the President's discretion. Rather, our decision is based upon our determination that in light of "the statute, its legislative history and the general purpose of the legislation 'the nature of the function that Congress vested in'" the United States Marshal does not require that the office be free of execu-

Supreme Court, "The Marshals are within the Executive branch of the federal government. The Marshal for each district is appointed by the President (citation omitted), is subject to the supervision and direction of the Attorney General (citation omitted), and is funded through Department of Justice appropriations". *Pennsylvania Bureau of Corrections*, 474 U.S. at ——, fn. 1, 106 S.Ct. at 358, fn. 1, 88 L.Ed.2d at 193, fn. 1. While the Marshal's Service may frequently serve two houses, it has but one master.[3] Thus, we find and conclude that the plaintiff's dismissal in no way constituted a violation of the doctrine of separation of powers. For the same reasons, we conclude that the plaintiff, since he was subject to dismissal at the will of the President without cause, had no property interest in his position as a United States Marshal and, therefore, possessed no right to notice and hearing under the Fifth Amendment's Due Process Clause, either prior or subsequent to his discharge.

■ We also find and conclude that the plaintiff has stated no claim for deprivation of any liberty interest he may possess under the Fifth Amendment. The fact that the President's decision to dismiss the plaintiff may have been premised upon false information, a fact we are required to accept as true, does not render the President's action unconstitutional. "The truth or falsity of the (information provided to the President) determines whether or not his decision to discharge the (plaintiff) was correct or prudent, but neither enhances nor diminishes (his) claim that his constitutionally protected interest in liberty has been impaired". *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684, 692 (1976). Further, the plaintiff makes makes no allegation whatsoever that the government communicated to the general public any information regarding the reasons for his dismissal or in any other manner disparaged his name. Thus,

he states no claim that his liberty interest in his "good name, reputation, honor or integrity" has been impaired. *Bishop*, 426 U.S. at 349, 96 S.Ct. at 2079–80, 48 L.Ed.2d at 692, quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Nor may such a claim be inferred from the mere fact the plaintiff was dismissed from his position, even though the dismissal alone may have generated adverse publicity and/or speculation. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C.Cir. 1985).

## II. The First Amendment Claim.

■ The second and final issue we must resolve is whether the plaintiff's discharge constituted a violation of his right to freedom of speech under the First Amendment to the United States Constitution. We find that it does not.

We are here required to apply a three-step analysis in assessing the plaintiff's claim that he was discharged for engaging in activity protected under the First Amendment. *See Johnson v. Lincoln University*, 776 F.2d 443 (3d Cir.1985) and *Murray v. Gardner*, 741 F.2d 434 (D.C.Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1748, 84 L.Ed.2d 813. As stated by the Third Circuit Court of Appeals,

First, the plaintiff must show that s/he engaged in protected activity. *See Pickering v. Board of Education*, 391 U.S. 563, [88 S.Ct. 1731, 20 L.Ed.2d 811] (1968) ... Second, a claimant who demonstrates that the activity was protected must then show that the activity was a substantial or motivating factor in a decision or action taken against the claimant. (Citation omitted). Third, the defendant can still defeat plaintiffs' claim by demonstrating that the same action would

tive control nor was such intended by Congress. *Borders*, 518 F.Supp. at 263.

**3.** Having concluded that Congress did not intend § 561 to ensure that the Marshal's Service

would be independent of executive control, we do not reach the question of whether the statute would be a legitimate constitutional exercise of congressional power were § 561 so intended.

have been taken even in the absence of the protected conduct. (Citation omitted).

*Johnson v. Lincoln University,* 776 F.2d 443, 450 (3rd Cir.1985), *quoting Trotman v. Board of Trustees of Lincoln University,* 635 F.2d at 224–25.

Assuming for the purposes of this case only that the plaintiff is a "public employee" entitled to the protections described in the cases cited, we need only go so far as the first step of the analysis for we find that the plaintiff did not engage in any "protected activity". The Supreme Court in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), stated that:

> When employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment ... [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 146–47, 103 S.Ct. at 1689–90. As in *Connick v. Myers,* we do not believe that Chabal's statements, communications and concerns expressed to his superiors can in any way be fairly characterized as being related to a matter of public concern. To the contrary, he spoke upon matters only of personal interest regarding the internal operations of the Marshal's Service and what he perceived should be its proper relationship vis-a-vis the federal judiciary. *See Murray v. Gardner, supra.* Thus, since he did not engage in a protected activity, he may not seek the refuge of the First Amendment. For these reasons, Chabal's First Amendment claim must be dismissed.