**Matthew CHABAL, Jr., Appellant,**

v.

**Ronald REAGAN, President, United States of America; Robert H. Tuttle, Deputy Assistant to the President and Director of Presidential Personnel, Individually and in his capacities as Deputy Assistant and Director; Stanley Morris, Director, United States Marshal's Service, Individually and in his capacity as Director; John J. Twomey, Deputy Director, United States Marshal's Service, Individually and in his capacity as Deputy Director; United States Marshal's Service; United States Department of Justice; United States of America.**

No. 86–5332.

United States Court of Appeals,
Third Circuit.

Argued Feb. 18, 1987.

Decided June 15, 1987.

Before SLOVITER, MANSMANN, Circuit Judges, and SCIRICA, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

*Introduction*

Plaintiff Matthew Chabal, Jr. filed suit in federal district court challenging his removal from his position as the United States Marshal for the Middle District of Pennsylvania and seeking reinstatement, back pay and other damages. The district court found that Chabal's complaint failed to state a claim and dismissed the action under Fed.R.Civ.P. 12(b)(6). *Chabal v. Reagan*, 633 F.Supp. 1061 (M.D.Pa.1986). Chabal appeals.

The threshold issue presented by this appeal is whether this court has jurisdiction over an appeal challenging a district court's dismissal on the merits of a complaint seeking both reinstatement and monetary damages from, *inter alia*, the United States or whether such an appeal rests exclusively with the United States Court of Appeals for the Federal Circuit. Resolution of that issue requires us to consider whether the district court had jurisdiction in the first instance.

II.

*Facts*

In 1982, Chabal was appointed to a four-year term as the marshal for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 561.[1] On October 4, 1985, prior to the expiration of his term, Chabal received a letter from defendant Robert Tuttle, Deputy Assistant to the President and Director of Presidential Personnel dated September

Clifford A. Rieders (argued), Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, Pa., for appellant.

Richard K. Willard, Asst. Atty. Gen., James J. West, U.S. Atty., William Kantner, Douglas N. Letter, Harold J. Krent (argued), Appellate Staff Civil Div. Dept. of Justice, Washington, D.C., for appellees.

* Hon. Anthony J. Scirica of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. The statute provides in part:
 (a) The President shall appoint, by and with the advice and consent of the Senate, a United States marshal for each judicial district.

 (b) Each marshal shall be appointed for a term of four years. On expiration of his term, a marshal shall continue to perform the duties of his office until his successor is appointed and qualifies, unless sooner removed by the President.
28 U.S.C. § 561.

26, 1985, informing Chabal that he was thereby removed from his position as a marshal.

On October 9, 1985, Chabal filed a complaint in the United States District Court for the Middle District of Pennsylvania naming as defendants President Reagan, Tuttle and certain officials of the Marshal's Service, both as individuals and in their official capacities, the Marshal's Service, the United States Justice Department, and the United States (all defendants hereafter referred to jointly as United States unless the context indicates otherwise). Chabal alleged that he was entitled to an investigation before removal by the Office of Special Counsel (OSC) of the Merit Systems Protection Board pursuant to the Civil Service Reform Act of 1978, and that his removal deprived him of property and liberty interests without due process of law. The complaint sought as relief declaratory and injunctive relief preventing Chabal's removal "pending an investigation and recommendation by the Office of Special Counsel," App. at 15, and monetary recovery in an unspecified amount.

On November 26, 1985, the defendants moved for dismissal of the complaint. The defendants and Chabal then stipulated that Chabal could amend his complaint to state an additional claim that his removal had occurred in retaliation for his exercise of First Amendment rights; that a January 14, 1986, letter from the Office of Special Counsel had mooted Chabal's claim for an injunction barring dismissal pending an investigation by the OSC; that Chabal would be considered to be seeking reinstatement; and that the United States' motion for dismissal would be considered to apply to the amended complaint.

In essence, Chabal's amended complaint alleges that Chabal received an unjustified unsatisfactory performance rating and was removed from his job as marshal by the President because Chabal followed the orders of the federal judges in his district rather than those of his superiors in the Marshal's Office and the Justice Department. The amended complaint restates Chabal's claims that his removal violated 28 U.S.C. § 561 and the Civil Service Reform Act and deprived him of property and liberty interests without due process of law, and adds the claim that the removal represented retaliation for Chabal's exercise of First Amendment rights. Chabal seeks as relief: (1) reinstatement; (2) "Damages which may be appropriate, including but not limited to, back pay, prospective relief and damages for emotional distress," App. at 59, 62; and (3) "Attorney's fees and costs." App. at 59, 62.

The defendants filed a motion to dismiss. The court held that Chabal's claim seeking to compel an investigation of his dismissal by the Office of Special Counsel was mooted by the decision of the Merit Systems Protection Board that Chabal was not covered by the statute. The court held that relief from that holding must be sought from the appropriate court of appeals. The court then granted the government's motion to dismiss the remaining claims for failure to state a claim upon which relief could be granted.[2] The court rejected Chabal's First Amendment retaliation claim because it concluded that Chabal had not been fired for protected speech, that is, speech "fairly characterized as being related to a matter of public concern." 633 F.Supp. at 1066 (citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). On appeal, Chabal does not contest the dismissal of his claims under the Civil Service Reform Act and the First Amendment.

The district court also rejected Chabal's due process claim because it concluded that the Marshal's Service exists "exclusively as an arm of the Executive Branch," that "Congress did not intend the Marshal's Service 'to be independent of control direction or interference from the President,'" 633

---

**2.** The government's motion to dismiss consisted of two parts. First, the government sought dismissal of Chabal's complaint in its entirety on the merits under Rule 12(b)(6). Second, the government sought dismissal of individual defendants for lack of personal jurisdiction under Rule 12(b)(2). Because the district court dismissed all of Chabal's claims on the merits, it did not reach the jurisdictional issue.

F.Supp. at 1064, and that under the principles of *Myers v. United States,* 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), *Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), and *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958), Chabal "was subject to dismissal at the will of the President without cause, had no property interest in his position as a United States Marshal and, therefore, possessed no right to notice and hearing under the Fifth Amendment's Due Process Clause." 633 F.Supp. at 1065.

Finally, the court also rejected Chabal's liberty interest claim. The court found that Chabal "makes no allegation whatsoever that the government communicated to the general public any information regarding the reasons for his dismissal or in any other manner disparaged his name. Thus, [Chabal] states no claim that his liberty interest in his 'good name, reputation, honor or integrity' has been impaired." 633 F.Supp. at 1065 (quoting *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)).

Chabal appeals, contending that the district court erred in concluding that marshals are removable at will and thus have no property right in continued employment. Chabal argues that the separation of powers doctrine mandates that marshals, once appointed, serve out their terms free from removal by the President save for cause. In addition, Chabal contends on appeal that the district court erred in concluding that Chabal stated no facts demonstrating a deprivation of a liberty interest in his continued good name and reputation.

Before we can reach the merits of Chabal's contentions, we must address the government's claim that we lack appellate jurisdiction over Chabal's appeal. The government argues that because Chabal's complaint seeks both non-monetary and monetary relief from the United States, appellate jurisdiction over the district court's dismissal of the complaint rests exclusively with the Federal Circuit.

### III.

### *Jurisdiction of the District Court*

■ Analysis of our jurisdiction must begin with an inquiry into the jurisdiction of the district court. Jurisdiction over non-tort monetary claims against the United States is exclusively defined by the Tucker Act, as codified at 28 U.S.C. §§ 1346, 1491, because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to non-tort claims seeking monetary relief. *See Hahn v. United States,* 757 F.2d 581, 585–86 (3d Cir.1985). Under the Tucker Act, the United States Claims Court and district courts share original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2) (sometimes referred to as the "Little Tucker Act"). Original jurisdiction over such claims seeking more than $10,000 vests exclusively in the Claims Court. 28 U.S.C. § 1491 (the so-called "Big Tucker Act").[3] In order to permit plaintiffs to exercise a choice as to whether to proceed in the district court or in the Claims Court, we have permitted plaintiffs to waive damages in excess of $10,000, *see Hahn,* 757 F.2d at 587; *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 25 (3d Cir.1975), a practice also followed by other circuits. *See e.g., Shaw v. Gwatney,* 795 F.2d 1351, 1356 (8th Cir.1986); *Zumerling v. Devine,* 769 F.2d 745, 748 (Fed.Cir.1985); *Goble v. Marsh,* 684 F.2d 12, 15 (D.C.Cir.1982).

---

**3.** The Claims Court is given "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The district courts have "original jurisdiction, concurrent with the United States Claims Court" of any "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2).

This effectuates the Congressional design to permit persons with comparatively small claims to bring suit in a geographically convenient court. *See United States v. Hohri*, — U.S. —, —, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51, 57 n. 1 (1987).

Where a non-tort monetary claim has been combined with a non-monetary claim, for example one seeking injunctive relief, we have held that even if the district court must transfer the monetary claim to the Claims Court, it can retain jurisdiction over the non-monetary claim if "the declaratory or injunctive relief a claimant seeks has significant prospective effect or considerable value apart from merely determining monetary liability of the government." *Hahn*, 757 F.2d at 590 (quoting *Minnesota by Noot v. Heckler*, 718 F.2d 852, 858 (8th Cir.1983)). *But see Matthews v. United States*, 810 F.2d 109, 111–13 (6th Cir.1987) (analyzing split in circuits over ability to retain reinstatement claim after transferring back pay claim).

 In cases involving only monetary claims against the United States, appellate jurisdiction rests exclusively with the Federal Circuit irrespective of whether original jurisdiction was in the district court or in the Claims Court, with certain exceptions not relevant here. *See* 28 U.S.C. § 1295(a)(2) and (3).[4] Similarly, when a monetary claim against the United States covered by the Little Tucker Act has been joined with a non-monetary claim in the district court, the Federal Circuit has exclusive jurisdiction over the appeal. *See* note 4 *supra* (Federal Circuit has exclusive jurisdiction if district court jurisdiction "was based, *in whole or in part*" on 28 U.S.C. § 1346). The regional circuits have uniformly recognized that all such appeals should be transferred to the Federal Circuit. *Shaw v. Gwatney*, 795 F.2d at 1353 (if "district court had jurisdiction of his back pay claim under section 1346(a)(2), we must transfer this appeal to the Federal Circuit"); *Wronke v. Marsh*, 767 F.2d 354, 355 (7th Cir.1985) ("the Tucker Act was the source of [the district court's] authority to grant back pay. The suit was therefore 'based ... in part' on § 1346, which places it within the exclusive appellate jurisdiction of the Federal Circuit"); *Van Drasek v. Lehman*, 762 F.2d 1065, 1068 (D.C.Cir. 1985) ("If the plaintiff makes any claim that invokes the jurisdiction of the district court under the Tucker Act, the entire case must be appealed to the Federal Circuit"); *Maier v. Orr*, 754 F.2d 973, 982 (Fed.Cir. 1985) (appeal of back pay and reinstatement award is "necessarily within the exclusive jurisdiction of this court under § 1295(a)(2)"); *Oliveira v. United States*, 734 F.2d 760, 762 (11th Cir.1984) (per curiam) ("It is clear from the record that the district court's jurisdiction was based at least in part on 28 U.S.C. § 1346(a)(2).... Under 28 U.S.C. § 1295(a)(2), the appeal should have been taken to the Federal Circuit").[5]

The Federal Circuit's exclusive jurisdiction over such appeals depends on whether the district court had jurisdiction at least in part under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). In *Hahn*, a class of medical and dental officers in the Public Health Service had filed a complaint in district court seeking both declaratory and injunctive relief and an award of back pay from the United States. The district court exercised jurisdiction over both the monetary

---

**4.** The statute provides in relevant part:

§ 1295. Jurisdiction of the United States Court of Appeals for the Federal Circuit
(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

⁣ ⁣ ⁣. ⁣. ⁣. ⁣ ⁣

(2) of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title ...;
(3) of an appeal from a final decision of the United States Claims Court.

**5.** In *United States v. Hohri*, — U.S. —, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), the Supreme Court construed the statutory exception to such exclusive jurisdiction ("except that jurisdiction of an appeal in a case brought in a district court under section ... 1346(b) [the Federal Tort Claims Act] ... shall be governed by sections 1291, 1292, and 1294 of this title," 28 U.S.C. § 1295(a)(2)), to require that a mixed case presenting a Little Tucker Act claim and an FTCA claim be appealed only to the Federal Circuit. As we noted in the text, in this case the exception clause is not at issue.

and non-monetary claims, and entered summary judgment for the plaintiffs. On appeal by the government, we held that because the complaint alleged a contract claim specifically requesting a judgment in excess of $10,000, the district court had erred in exercising jurisdiction over the monetary claim. 757 F.2d at 587–88. We also held that the district court had properly exercised jurisdiction with respect to the non-monetary claim, and we therefore exercised appellate jurisdiction and addressed the merits of that claim. *Id.* at 590.

■ The government argues that we need not inquire into the propriety of the district court's jurisdiction, but instead should let the Federal Circuit, which it contends has exclusive appellate jurisdiction, make all decisions on Tucker Act jurisdiction in the interests of national uniformity. We reject that suggestion. Our need to consider the district court's jurisdiction stems from the same overarching principle that requires us continually to inquire into our own jurisdiction because as courts of limited jurisdiction we cannot act without assuring ourselves of the statutory predicate for such action. *See Page v. Schweiker*, 786 F.2d 150, 153 (3d Cir.1986) (appellate court must satisfy itself of both its own and lower court's jurisdiction); *In re Morrissey*, 717 F.2d 100, 103 (3d Cir.1983) (appellate court may note district court jurisdictional defect on own motion). Particularly in a case, such as this, where there are both monetary and non-monetary claims before the district court, we must first ascertain what was properly before that court in order to determine our own jurisdiction.

Moreover, accepting the government's position would effectively require us to defer to the Federal Circuit in all issues of appellate jurisdiction under 28 U.S.C. § 1295 even when it is clear that appellate jurisdiction rests properly in the regional circuit. We agree with the Eighth Circuit that such a requirement would improperly "subordinate a regional circuit to the Federal Circuit with regard to such traditional and inherent functions as determining its own jurisdiction and supervising the exer-

cise of jurisdiction by the district courts below it." *Shaw v. Gwatney*, 795 F.2d at 1353 n. 2. If there be any substantially conflicting views in such matters, uniformity is attainable by Supreme Court review.

■ We join those circuits which have routinely inquired into the amount of back pay sought as a means of determining the propriety of district court jurisdiction and hence the proper court of appellate jurisdiction. *See Matthews v. United States*, 810 F.2d at 110–111; *Kotarski v. Cooper*, 799 F.2d 1342, 1344 (9th Cir.1986); *Shaw*, 795 F.2d at 1353–56; *Wronke v. Marsh*, 767 F.2d at 355; *Van Drasek v. Lehman*, 762 F.2d at 1068–72; *Doe v. United States Department of Justice*, 753 F.2d 1092, 1101 (D.C.Cir.1985); *Keller v. Merit Systems Protection Board*, 679 F.2d 220, 222 n. 4 (11th Cir.1982). *But see Oliveira v. United States*, 734 F.2d at 762 n. 6 ("Because we lack jurisdiction, we do not consider the United States' alternative argument that the Claims Court had jurisdiction at the trial level because the claim was for more than $10,000. That question, if appropriate, should be answered by the Federal Circuit"); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877–78 (Fed.Cir.1983) ("Congress intended this court to have the exclusive authority under § 1295 to decide the issue, necessarily an integral part of a case, whether a district court has jurisdiction under § 1338").

■ We turn then to determine whether the jurisdiction of the district court was based at least "in part" on the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which would be the basis for exclusive appellate jurisdiction in the Federal Circuit. The Tucker Act creates no substantive right to damages, *see United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983), but rather only waives the United States' sovereign immunity for monetary claims founded upon a contract with the United States or upon "the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1346(a)(2); *see Van Drasek*, 762 F.2d at 1070. For purposes of the Tucker Act, we treat Chabal's claims against indi-

vidual federal defendants in their official capacities as alleging claims against the United States. *See Empire Kosher Poultry, Inc. v. Hallowell,* 816 F.2d 907, 916, (3d 1987).

Chabal's claims against the federal defendants in their individual capacities are not treated as seeking recovery from the United States and so do not fall within the Tucker Act. *Id.,* at 912. *See also Kotarski v. Cooper,* 799 F.2d at 1345; *Van Drasek v. Lehman,* 762 F.2d at 1070. Similarly, Chabal's monetary claims founded only on alleged due process violations are not covered by the Tucker Act because the United States has not waived its sovereign immunity for such claims. *See Empire Kosher Poultry,* 816 F.2d at 912; *Clark v. Library of Congress,* 750 F.2d 89, 103 & n. 31 (D.C.Cir.1984); *Duarte v. United States,* 532 F.2d 850, 851–52 (2nd Cir.1976). Chabal's non-monetary claim against all defendants for reinstatement in effect seeks review of an agency action as authorized by the APA, 5 U.S.C. § 702, and the district court's jurisdiction over this claim is founded on 28 U.S.C. § 1331, not the Tucker Act. *See Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977); *Fairview Township v. United States Environmental Protection Agency,* 773 F.2d 517, 527 n. 19 (3d Cir.1985).

■ Thus, the only claim Chabal asserts that could arguably be covered by the Tucker Act is one against the United States for monetary damages based upon an act of Congress, 28 U.S.C. § 561 (providing for a four year term for marshals), since he cites us to no applicable regulation of an executive department or express contract. We must ascertain whether that claim seeks more than $10,000. Patently, Chabal's claim for "damages for emotional distress" is not founded upon that statute. Only Chabal's claim for back pay, or prospective pay, is such a claim, and therefore only the amount of pay sought need be

considered in determining whether Chabal seeks $10,000 or less.[6]

In determining the amount of Chabal's monetary claim against the United States, we are faced with the difficulty that Chabal's complaint does not state the amount of damages he seeks. Ordinarily, the amount in controversy is to be determined as of the time of the institution of the action. *See* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3702 at 28 (2d ed. 1985). Chabal was removed effective September 26, 1985. He filed his complaint on October 9, 1985. It is undisputed that in the 14–day period between removal and filing, Chabal had not accrued more than $10,000 in back pay.

■ However, in a back pay case in which a continuing right to employment is claimed, the amount in controversy cannot be considered only the amount of back pay accrued at the time of filing. If it were so treated, it would produce the anomalous result that a plaintiff could obtain district court jurisdiction by filing before the back pay due reached $10,000, although recovery would exceed that amount through continuing accrual of back pay during the course of the action. This result has been explicitly rejected by those circuits faced with it.

In *Shaw,* 795 F.2d at 1355–56, the Eighth Circuit faced a situation similar to that presented by Chabal's complaint. There, a dismissed National Guard officer filed his complaint four days prior to his dismissal seeking only an injunction preventing dismissal. He subsequently amended the complaint to add a claim for back pay, but did not state the amount sought. The court of appeals held that jurisdiction must be determined on the basis of the amended complaint, 795 F.2d at 1354, and that the determination whether the amount sought was more than $10,000 was analogous to the situation presented by complaints involving continuing accrual of damages.

---

6. In view of our determination of the amount of back pay sought, we need not decide whether any attorney's fees to which Chabal would be entitled as a result of his back pay action would also be included in the amount for purposes of determining jurisdiction under 28 U.S.C. § 1346(a)(2). *See Hahn,* 757 F.2d at 587 n. 3; *Graham v. Henegar,* 640 F.2d 732, 735 (5th Cir. 1981).

After noting that courts construing complaints filed prior to final payment on installment contracts, seeking continuing expenses pending rescission, and seeking to establish a right to continuing social security benefits have looked to the total amount recoverable in a single action, the *Shaw* court held: "the amount of a claim against the United States for back pay in the contemplation of section 1346(a)(2) is not the amount of back pay accrued at the time of filing but the total amount of back pay the plaintiff stands ultimately to recover in the suit." *Id.* at 1355 (footnote omitted).

 Similarly, in *Goble v. Marsh*, 684 F.2d at 15–16 & n. 5, the District of Columbia Circuit held that because a back pay claim continues to accrue between filing of the complaint and entry of final judgment, the district court would have no jurisdiction under the Tucker Act unless plaintiffs waived their post-filing back pay claims in excess of $10,000. We agree. The district court could take jurisdiction over Chabal's back pay claim only if Chabal's complaint, at the time of filing, could reasonably be read as seeking an ultimate recovery of back pay not in excess of $10,000, or if Chabal waived recovery in excess of $10,000.

 At the time of filing, Chabal had approximately one year remaining in his four-year term as marshal, and his back pay due, if he prevailed, would exceed $10,000. Concededly, because Chabal originally sought an injunction to prevent removal and the amended complaint seeks reinstatement, Chabal, if reinstated, could recover back pay only for the period between his removal and his reinstatement, an amount which might not be in excess of $10,000. However, we do not believe that the district court's jurisdiction should depend on the happenstance that the district court may decide that reinstatement is appropriate before the back pay requested accrues to more than $10,000. Instead, the complaint must be read as a whole, and as we noted above, it can be read as seeking monetary relief in excess of $10,000. Therefore, absent a waiver by Chabal of his monetary Tucker Act claim against the

United States in excess of $10,000, we conclude that the district court did not have jurisdiction even "in part" under the Tucker Act. It follows that we would have appellate jurisdiction to review the district court's disposition of the non-Tucker Act claims.

## IV.

### *Disposition*

 It remains for us to decide what disposition to make of this appeal. As we noted above, the courts have generally permitted plaintiffs to remain in the district court even if their monetary claims against the United States within the scope of the Tucker Act exceed $10,000 in amount, as long as plaintiffs waive recovery in excess of $10,000. We will, therefore, remand this case to the district court so that Chabal can elect whether to make such a waiver.

If Chabal waives the excess claims, the appellate route would be to the Federal Circuit. If Chabal chooses not to make the waiver, then the district court must transfer the Tucker Act claim to the Claims Court, and must decide whether the non-Tucker Act claims are properly severable. *Cf. Coco Brothers, Inc. v. Pierce*, 741 F.2d 675, 679 n. 4 (3d Cir.1984) (questioning but not deciding whether Claims Court may properly grant injunctive relief). If so, Chabal will then have another opportunity to appeal to this court on the merits.

We recognize that in *Hahn*, this court severed the putative Tucker Act claim from the remaining claims, remanded the monetary claim to allow the plaintiffs the opportunity either "to waive damages in excess of $10,000" in order to allow the district court to exercise jurisdiction or not to waive damages in which case the district court could transfer the monetary claim "to the Claims Court pursuant to 28 U.S.C. § 631," 757 F.2d at 587–88, and nonetheless reached the merits of the appeal on the non-Tucker Act claims. *See id.* at 590–94. The Eighth Circuit in *Shaw* followed the *Hahn* approach. *See* 795 F.2d 1356–59. We note, however, that in *Hahn*, we stated that plaintiffs did not challenge "our au-

thority to decide the merits of [the] appeal," 757 F.2d at 587 n. 3, and therefore it does not appear from the opinion that the government argued there, as it does here, that the appellate route was exclusively in the Federal Circuit. Under those circumstances, we do not read *Hahn* as mandating us to reach the merits of this appeal until it is clear that we have jurisdiction to do so.[7] The precedent and principle counseling us not to render an advisory opinion is too well established to require citation.

Chabal argues that a transfer, and presumably also a new appeal to the Federal Circuit at this late date after briefing and argument here, would be a duplication of judicial efforts. The short answer is that we cannot manufacture jurisdiction if we have none. In *Squillacote v. United States*, 747 F.2d 432, 433 (7th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 302 (1985), the court did refuse to transfer a case to the Federal Circuit on grounds of fairness and efficiency, even after discovering that exclusive jurisdiction in the Federal Circuit would have been proper because district court jurisdiction had been based in part on 28 U.S.C. § 1346(a)(2). In that case, the Seventh Circuit had already published its decision on the merits, and it held that transfer would result in the forum shopping the statute was intended to avoid. *See id.* at 434–35. Later cases have limited *Squillacote* to its unusual facts. *See Wronke v. Marsh*, 767 F.2d at 356. *See also Professional Managers' Association v. United States*, 761 F.2d 740, 745 (D.C.Cir.1985) (per curiam) (rejecting *Squillacote*).

The foregoing exegesis of the applicable law concerning jurisdiction of claims against the United States under the Tucker Act should provide ample raison d'etre for the district courts to determine whether a plaintiff's Tucker Act claim is in excess of $10,000 *before* reaching the merits of any

claim. Had the district court made such a determination at the inception of this litigation and required Chabal to elect whether or not to waive any excess, this tortuous appellate proceeding and the consequential remand with possible second appeal would have been avoided. In fairness to the district court we note, however, that nothing in the record suggests that the government challenged the district court's Tucker Act jurisdiction. The author of this opinion has recently commented on the U.S. Attorney's obligation to raise such an issue promptly before the trial court. *See Empire Kosher Poultry, Inc.*, 816 F.2d at 917 (Sloviter, J., concurring).

For the foregoing reasons, we will vacate the district court's order and remand for further proceedings in accordance with this opinion, without prejudice to the district court's reentry of the same order after the jurisdictional issues have been resolved.

---

**7.** In a footnote in *United States v. Hohri,* the Supreme Court suggested that "appeals of different parts of a single case should not go to different courts." —— U.S. at —— n. 3, 107 S.Ct. 2250 n. 3. Although the Court was discussing only the exception clause of 28 U.S.C. § 1295(a)(2), we should exercise caution before bifurcating a case on appeal since the Court also stated that "at least when a case has not been bifurcated in the district court, a bifurcated appeal of the different legal claims raised in any one case would result in an inefficient commitment of the limited resources of the federal appellate courts." *Id.*