906 F.2d 94
 Denise ZELLOUS, Sandra Fields and Madeline Bernard on their
own behalf and on behalf of all others similarly
situated, Appellants,
v.
BROADHEAD ASSOCIATES, Broadhead Fording Associates, The
Allegheny Management Company, Melvin Pugatch, The United
States Department of Housing and Urban Development, Jack F.
Kemp*, and John E. Pisano
 No. 89-3560.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 8, 1990.
Reargued Feb. 13, 1990.
Decided June 19, 1990.
 
 Donald Driscoll (argued), Neighborhood Legal Services Assoc., Pittsburgh, Pa., for appellants.
 Barbara C. Biddle (argued), Michael Jay Singer, Civ. Div., Appellate Staff, Department of Justice, Washington, D.C. and Paul J. Brysh, U.S. Attorney's Office, Pittsburgh, Pa., for Federal Appellees U.S. Dept. of Housing and Urban Development, et al.
 Argued Jan. 8, 1990.
 Before GIBBONS, Chief Judge**, and SCIRICA, Circuit Judge, and WALDMAN, District Judge.***
 Reargued Feb. 13, 1990.
 Before HIGGINBOTHAM, Chief Judged, and SCIRICA, Circuit Judge, and WALDMAN, District Judge.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 The plaintiffs in this litigation are former, present, and prospective tenants of Westgate Village, a privately owned and managed housing project in Pittsburgh, whose rent is subsidized under section 8 of the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. Sec. 1437f (1982 & Supp. V 1987) ("Section 8"). The tenants contend that the U.S. Department of Housing and Urban Development ("HUD") and its officials (collectively, the "federal defendants"), together with the housing project's owners and managers violated the Housing Act and associated federal regulations as well as the Administrative Procedure Act by failing to make timely adjustments in their utilities allowance. This caused the tenants to pay a higher share of their income as rent than is permitted under the Brooke Amendment, 42 U.S.C. Sec. 1437a(a) (Supp. V 1987), which places a cap on the total of rent plus utilities for which tenants are responsible.
 
 
 2
 In their complaint, filed in October 1985, the tenants requested "declaratory, injunctive and monetary relief or in the alternative restitution." The tenants contended that the retrospective aspect of this relief should require HUD reimbursement for the rent they paid beyond that which would have been due if the utilities allowance had been set higher. By order of February 12, 1987 the district court granted the defendants' motion, made under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), to dismiss all claims relating to the utilities allowance. The court concluded that although the tenants could maintain a private action to enforce their rights under the Brooke Amendment, their claims for injunctive and declaratory relief were moot because HUD had properly adjusted the utility rates in 1986. In addition, the court held that the tenants could not maintain a claim for monetary relief against the federal defendants because the tenants had failed to show a waiver of sovereign immunity. The tenants now appeal the dismissal of their claims against the federal defendants. We will reverse and remand.
 
 I.
 
 3
 As a threshold matter, this Court must determine whether we have jurisdiction to decide the questions raised in this appeal. We hold that we do.[1] The federal defendants contend that the appeal lies in the Federal Circuit because the monetary claim, they argue, is based on federal statutes and contracts within the meaning of the Little Tucker Act, 28 U.S.C. Sec. 1346(a)(2) (1982) (district courts and Claims Court have concurrent jurisdiction of civil actions against United States not exceeding $10,000, founded upon Constitution, any Act of Congress or regulation, or upon express or implied contract with the United States).[2] The Federal Circuit has exclusive appellate jurisdiction when the jurisdiction of the district court is based in whole or in part on Sec. 1346. 28 U.S.C. Sec. 1295(a)(2) (1982); see Chabal v. Reagan, 822 F.2d 349, 354 (3d Cir.1987) (claims under Little Tucker Act must be appealed to Federal Circuit).[3] Thus, to determine our own jurisdiction, we first must ascertain what was properly before the district court. Id. at 355.
 
 
 4
 The tenants have not invoked Sec. 1346 and the district court dismissed the claim having concluded that the tenants had failed to show any waiver of sovereign immunity. In effect, the district court could find no basis upon which to exercise jurisdiction over the monetary claim. We express no opinion whether the tenants could have based a claim for damages on Section 8 and the Brooke Amendment for which the Tucker Act may grant a waiver of sovereign immunity. Nonetheless, the mere possibility that the district court could have asserted Tucker Act jurisdiction over a claim for money damages is not sufficient to divest this court of appellate jurisdiction in light of our holding, to which we now turn, that the tenants' monetary claim is for specific relief and thus Sec. 702 of the Administrative Procedure Act, 5 U.S.C. Sec. 702 (1988), provides a waiver of sovereign immunity for the entire action. Cf. Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 2740 & n. 48, 101 L.Ed.2d 749 (1988) (district court's jurisdiction under Sec. 702's waiver of sovereign immunity is not barred by possibility that monetary judgment may be entered by Claims Court under Big Tucker Act, 28 U.S.C. Sec. 1491(a)(1) (1982)).
 
 II.
 
 5
 The federal defendants contend that even if we do have jurisdiction, we should affirm the district court's dismissal of the utilities allowance claims as barred by the doctrine of sovereign immunity. They contend that the claims are for money damages and thus a waiver, if any, must be grounded on the Tucker Act. Moreover, they argue that a Tucker Act waiver is unavailable in this case because the Housing Act cannot " 'fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " See United States v. Testan, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1009, 178 Ct.Cl. 599 (1967)).
 
 
 6
 We hold that the claims made by the Westgate Village tenants are not for money damages and that the district court may award complete relief under the waiver in Sec. 702 of the Administrative Procedure Act. The Act's comprehensive provisions permit aggrieved persons to seek judicial review of final agency action for which there is "no other adequate remedy in a court." 5 U.S.C. Secs. 702, 704 (1988). A 1976 amendment to Sec. 702 waives sovereign immunity when the relief sought is "other than money damages."[4]
 
 
 7
 We believe that our holding is mandated by Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).[5] In Bowen, the Supreme Court considered the meaning of the 1976 amendment to Sec. 702 in the context of a challenge by the Commonwealth of Massachusetts to a final order of the Secretary of Health and Human Services ("HHS"), in which the Secretary refused to reimburse the state for certain expenditures under the Medicaid program. Id. 108 S.Ct. at 2726. The state filed suit in federal district court invoking the court's federal question jurisdiction, 28 U.S.C. Sec. 1331 (1982), seeking declaratory and injunctive relief, and alleging that the United States had waived its sovereign immunity under Sec. 702. The district court reversed the disallowance decision and the Court of Appeals for the First Circuit affirmed the holding. 108 S.Ct. at 2728-30.
 
 
 8
 In his petition for certiorari, the Secretary argued that Sec. 702 did not authorize review by the district court because the state sought relief in the form of money damages. Id. at 2731.[6] The Supreme Court held, however, that the district court had not awarded "money damages" even though its order could require the payment of money by the federal government. Id. at 2740. According to the Court, to the extent the order resulted in a reimbursement for the state, that outcome was "a mere by-product of [the district court's] primary function of reviewing the Secretary's interpretation of federal law." Id. The Court also held that even if the district court order could be construed as a money judgment, it was for specific relief rather than for money damages and thus was within the court's jurisdiction under Sec. 702's waiver of sovereign immunity. Id.
 
 
 9
 The Court stated that the reversal of the Secretary's disallowance decision was an adjustment in the size of the federal grant payable to the state, not a damage award. The Court distinguished actions at law for damages--which are intended to compensate the plaintiff for injury to person, property, or reputation--from equitable actions for specific relief--which include the recovery of specific monies. Id. at 2731-32. According to the Court, the legislative history of the 1976 amendment "demonstrate[s] conclusively that the exception [in Sec. 702] for an action seeking 'money damages' should not be broadened beyond the meaning of its plain language." Id. at 2735. The Court concluded that the state did not seek money in compensation for the damages it had sustained but only "to enforce the statutory mandate itself, which happens to be one for the payment of money. The fact that the mandate is one for the payment of money must not be confused with the question whether ... [it] is a payment of money as damages or as specific relief." Id.
 
 
 10
 The Court quoted with approval Judge Bork's explanation in Maryland Department of Human Resources v. Department of Health & Human Services, 763 F.2d 1441, 1446 (D.C.Cir.1985): " '[The State] is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses ... suffered by virtue of the withholding of those funds.' " 108 S.Ct. at 2735. According to the Court, " '[d]amages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' " Id. at 2732 (quoting Maryland Department of Human Resources, 763 F.2d at 1446, and D. Dobbs, Handbook on the Law of Remedies 135 (1973)) (emphasis in original).
 
 
 11
 In our case, the tenants do not seek compensatory damages for injuries they allegedly suffered as a result of HUD's failure to make timely adjustments in the utilities allowance.[7] They seek to enforce both prospectively and retrospectively the mandate contained within the Brooke Amendment.
 
 The Brooke Amendment provides in part:
 
 12
 [A] family shall pay as rent for a dwelling unit assisted under this chapter ... the highest of the following amounts, rounded to the nearest dollar: (A) 30 per centum of the family's monthly adjusted income; ...
 
 
 13
 42 U.S.C. Sec. 1437a(a)(1) (Supp. V 1987). The maximum tenant rent includes an allowance for utilities when the tenants pay utility bills directly. See 24 C.F.R. Sec. 813.102. Moreover, families may receive a utility reimbursement when the utility allowance is greater than the rent owed. See id. Secs. 886.102, 886.109. The Supreme Court has stated:
 
 
 14
 The Brooke Amendment could not be clearer: as further amended in 1981, tenants could be charged as rent no more and no less than 30 percent of their income. This was a mandatory limitation focusing on the individual family and its income. The intent to benefit tenants is undeniable.
 
 
 15
 Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 430, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987).
 
 
 16
 We recognize that in Bowen, the plaintiff state sought specific relief under a statute that mandates direct payment to the state of a percentage of its Medicaid expenses. See 42 U.S.C. Sec. 1396b(a) (1982 & Supp. V 1987) (Secretary shall pay to each state a percentage of amount expended by state as medical assistance for eligible individuals). Here, neither Section 8 nor the Brooke Amendment mandates direct payments to the plaintiff tenants. Instead, the tenants' rental obligation is reduced through a system of government subsidies to property owners.[8] We do not believe that this scheme of indirect support for tenants transforms the character of the relief they seek into a substitute remedy. The Brooke Amendment entitles lower-income families to pay no more than 30 percent of their adjusted income in rent and utilities. Among other relief, the tenants seek reimbursement for the excess rent they were forced to pay. Under Bowen, HUD is incorrect in characterizing the requested reimbursement as damages.
 
 In Bowen, the Court held that:
 
 17
 The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages":
 
 
 18
 "Because Congress undoubtedly did not intend this result, we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case.
 
 
 19
 [ ]In this Court, the Town repeatedly characterizes reimbursement as 'damages,' but that simply is not the case. Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." School Committee of Burlington v. Department of Education of Massachusetts, 471 U.S. 359, 370-371, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985).
 
 
 20
 108 S.Ct. at 2732. Similarly in this case, " '[r]eimbursement merely requires [HUD] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it [implemented timely utility allowance adjustments].' " See id. (quoting School Committee, 471 U.S. at 370-71, 105 S.Ct. at 2003). We find it significant that the Court cited School Committee in support of this proposition. See also Beverly Hospital v. Bowen, 872 F.2d 483, 487 (D.C.Cir.1989) (hospitals not impeded by sovereign immunity in their suit against HHS for reimbursement of cost of photocopying records for peer review organizations; hospitals seek funds to which they are entitled under statute requiring Secretary to pay peer review organization on behalf of hospital).
 
 
 21
 Following the direction of the Court in Bowen, we conclude that the tenants seek only that to which they were entitled under the Brooke Amendment and thus the relief requested is "other than money damages," 5 U.S.C. Sec. 702. Moreover, we find that judicial review under Sec. 702's waiver is not precluded by the requirement that "there is no other adequate remedy in a court," 5 U.S.C. Sec. 704.
 
 
 22
 In Bowen, the Secretary argued that even if Sec. 702 was satisfied, Sec. 704 barred relief because the state had an adequate remedy in the Claims Court. 108 S.Ct. at 2731. The Court then rejected the "Secretary's novel submission" that the entire action was barred by Sec. 704 because "the doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." Id. at 2736. The identical principle applies here. As the Court held: "[E]ven if the District Court's orders are construed in part as orders for the payment of money by the Federal Government to the state, such payments are not 'money damages,' ... and the orders are not excepted from Sec. 702's grant of power by Sec. 704...." Id. at 2740; cf. Grimesy v. Huff, 876 F.2d 738, 740 n. 3 (9th Cir.1989) (HHS conceded that after Bowen, Claims Court does not have exclusive jurisdiction over plaintiffs' claim for reimbursement of AFDC benefits that were improperly denied based on invalid HHS and California regulations); B.K. Instrument, Inc. v. United States, 715 F.2d 713, 727 (2d Cir.1983) (plain intent of Congress in amending Sec. 702 is subverted by requiring all claims against United States involving more than $10,000 to be brought in Claims Court).
 
 
 23
 In this case, we have determined that the tenants do not seek relief in the form of money damages and that jurisdiction under Sec. 702 is proper. Therefore, we do not reach the question whether if this were a claim for money damages, the Tucker Act would waive sovereign immunity in a suit based on Section 8 and the Brooke Amendment. See Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 596 (9th Cir.1990) (Tucker Act is limited to claims for money damages and does not provide jurisdiction to hear claims for monetary equitable relief).
 
 
 24
 Similarly, the "sue and be sued" provision of the Housing Act of 1948, 42 U.S.C. Sec. 1404a (Supp. V 1987), is not an impediment to a suit under Sec. 702. Section 1404a permits suits against the Secretary of HUD "with respect to its functions under this chapter." Id. HUD argues that Sec. 1404a does not waive immunity for claims that would be recoverable from general treasury funds because such actions are deemed to be actions against the United States rather than against the Secretary. See Selden Apartments v. United States Department of Housing and Urban Development, 785 F.2d 152, 158 (6th Cir.1986); cf. Portsmouth Redevelopment & Housing Authority v. Pierce, 706 F.2d 471, 473-75 (4th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). The tenants contend that HUD regulations require the agency to maintain a segregated account to fund increases in housing payments. See 42 U.S.C. Sec. 1437f(c)(6) (1982 & Supp. V 1987); 24 C.F.R. Sec. 886.108(c). The tenants have not asserted, however, that the source of funds for this account is other than the United States Treasury. Thus, the availability of a Sec. 1404a waiver is far from certain under the circumstances. Regardless whether Sec. 1404a is available, we do not believe that this provision, which serves only to permit suit against HUD, is the kind of " 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." Cf. Bowen, 108 S.Ct. at 2737 (availability of money remedy in Claims Court will not relieve district court of normal jurisdiction under APA).
 
 
 25
 We recognize that there may be cases in which the conceptual line is narrow between compensation for losses sustained and monetary relief as "the very thing" to which a claimant is entitled. We recognize also that this line may be further obscured by clever pleading. In this case, however, the essential nature of the utility allowance claims is like those presented in Bowen, and Bowen controls our decision. Thus, we hold that the Administrative Procedure Act provides a waiver of sovereign immunity and that the tenants' entire action may properly be adjudicated in the district court.
 
 III.
 
 26
 The district court also held that after HUD's upward revision of the utilities allowance, effective April 1, 1986, the injunctive and declaratory relief claims of the tenants were moot. The tenants disagree, contending: 1) that the 1986 revision should have been implemented retroactively to the first day of the month following the initial rate increase; 2) that the revision was computed improperly; and 3) that an injunction should issue requiring HUD to properly set and maintain utility allowances in the future.
 
 
 27
 "An action becomes moot when '(1) there is no reasonable expectation that the alleged events will recur ... and (2) interim relief or events have completely eradicated the effects of the violation.' " Ames v. Westinghouse Electric Corp., 864 F.2d 289, 291-92 (3d Cir.1988) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), and United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). The effects of the violation alleged in the tenants' claim for retrospective restitution have not been eradicated. Moreover, in the absence of the declaratory and injunctive relief sought, it can not be said that there is no reasonable expectation of the recurrence of the alleged events. The district court should have reached the merits of the utilities allowance claims. Of course, in stating this conclusion we express no opinion of our own about the merits.
 
 IV.
 
 28
 The order of February 12, 1987, dismissing the utilities allowance claims will be reversed, and the case will be remanded to the district court.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), Jack F. Kemp is automatically substituted for the former Secretary
 
 
 **
 The Honorable John J. Gibbons retired from the Court on January 15, 1990, and took no part in this decision
 
 
 ***
 The Honorable Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 d
 The Honorable A. Leon Higginbotham, Jr. became Chief Judge on January 16, 1990
 
 
 [1]
 The order appealed from, entered February 12, 1987, seemed to lack finality within the meaning of 28 U.S.C. Sec. 1291 (1982), and no express determination and direction for the entry of judgment under Fed.R.Civ.P. 54(b) has been filed. We asked the parties to address the apparent lack of appellate jurisdiction which results from lack of finality. In their submissions, they agree that the order became final and appealable on June 12, 1989, when the district court entered an order approving a settlement agreement which resolved all other issues in the case. We agree. See Dowling v. City of Philadelphia, 855 F.2d 136, 138 (3d Cir.1988) (effect of premature notice of appeal)
 
 
 [2]
 The federal defendants contend and the tenants do not dispute that if the Tucker Act is implicated at all, only the Little Tucker Act applies because the individual claims for relief do not exceed $10,000
 
 
 [3]
 The United States Claims Court has exclusive original jurisdiction over nontort money damage claims that exceed $10,000. See 28 U.S.C. Sec. 1491(a)(1) (1982); Chabal v. Reagan, 822 F.2d 349, 353 (3d Cir.1987) (original jurisdiction over "Big" Tucker actions vests exclusively in Claims Court). But see Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988) (assumption of exclusive Claims Court jurisdiction is not based on statutory language; the fact that purely monetary aspects of case could have been decided in Claims Court is not sufficient reason to bar district court from awarding monetary relief other than money damages)
 
 
 [4]
 The amendment provides in part:
 An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
 Pub.L. No. 94-574, Sec. 1, 90 Stat. 2721 (1976) (codified at 5 U.S.C. Sec. 702 (1988)).
 
 
 [5]
 Prior to Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), we held that jurisdiction over nontort monetary claims against the United States was "exclusively defined by the Tucker Act." Chabal v. Reagan, 822 F.2d 349, 353 (3d Cir.1987); see Hahn v. United States, 757 F.2d 581, 588 (3d Cir.1985) (Administrative Procedure Act may not be used to circumvent limitations on district court jurisdiction created by Tucker Act). In Bowen, the Supreme Court concluded that Congress intended Sec. 702 of the Administrative Procedure Act to waive immunity for monetary as well as nonmonetary claims for specific relief. 108 S.Ct. at 2731-36. We note that Bowen was not decided at the time the district court was called upon to address this question
 
 
 [6]
 The Secretary contended that the Claims Court had exclusive jurisdiction because the state's action included a "Big" Tucker Act claim for money damages in excess of $10,000. 108 S.Ct. at 2730 & n. 14
 
 
 [7]
 The tenants contend that although they have not requested compensation for the consequential harm resulting from HUD's failure to act in a timely manner, the harm has been substantial. The tenants allege that some families were unable to afford both utilities and rent, which led to evictions, forced utility terminations, and emotional stress
 
 
 [8]
 Section 8 of the Housing Act authorizes HUD to enter into assistance contracts with property owners entitling them to receive payments for dwelling units rented to lower-income families. 42 U.S.C. Sec. 1437f(a)-(c) (1982 & Supp. V 1987). The amount of the assistance payment is the difference between the maximum monthly rent provided by the contract and the rent the family must pay under the Brooke Amendment. Id. Sec. 1437f(c)(3)