Frank **SARACO**, Howard Marder, Gary Levenson, Charles Dubano, Richard Boles, and Steven Foreman, et al., Plaintiffs,

v.

Carol Boyd **HALLETT**, et al., Defendants.

Civ. A. No. 91–5629.

United States District Court, E.D. Pennsylvania.

Aug. 4, 1993.

Kristine M. Derewicz, Saul, Ewing, Remick & Saul, Philadelphia, PA, and Gregory O'Duden, Elaine Kaplan, and David F. Klein, Nat. Treasury Employees Union, Washington, DC, for plaintiffs.

Shalom Brilliant, David M. Cohen, U.S. Dept. of Justice, Civ. Div., Commercial Litigation Branch, Washington, DC, and Susan Dein Bricklin, U.S. Attorney's Office, Philadelphia, PA, for defendants.

## MEMORANDUM

DUBOIS, District Judge.

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint and Defendants' Motion to Transfer Count I of Plaintiffs' Third Amended Complaint to the United States Court of Federal Claims (hereinafter "Court of Federal Claims") In the Alternative to Dismissal. For the reasons which follow, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint will be denied and Defendants' Motion to Transfer Count I to the Court of Federal Claims will be granted. The Court will also transfer Count II of Plaintiffs' Third Amended Complaint to the Court of Federal Claims.

## I. BACKGROUND

This action was commenced by the six named plaintiffs, employees of the United States Customs Service ("Customs Service"), on their own behalf, and on behalf of more than 700 similarly situated employees of the Customs Service who have filed consent forms to participate in this action as "opt-in" plaintiffs, alleging that the Customs Service violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., in the calculation of their overtime pay. The defendants are Carol Boyd Hallett, Commissioner of the United States Customs Service, Constance Berry Newman, Director of the Office of Personnel Management ("OPM"), and the United States of America, plaintiffs' employer.[1]

Plaintiffs are federal employees who are covered by the FLSA. See 29 U.S.C. § 203(e)(2)(A). In general, under the FLSA, employees are entitled to overtime pay at one and a half times their regular hourly rate of pay for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). However, "any employee employed in a bona fide ... administrative ... capacity" is exempt from the overtime pay provision of section 207. See 29 U.S.C. § 213(a)(1). Employees who are exempt from the FLSA's overtime provision receive overtime pay at a "capped" rate—one and a half times the rate of a level GS–10, step one employee—pursuant to the Federal Employment Pay Act ("FEPA"). See 5 U.S.C. § 5542(a)(2). Plaintiffs assert that their regular hourly rate is higher than that of a level GS–10, step one employee. (Third Am.Compl. ¶ 15)

Plaintiffs were categorized as administrative employees within the meaning of section 213(a)(1) of the FLSA by the Customs Service pursuant to an OPM regulation which defines the term "administrative employee" and sets forth a primary duty test for determining whether an employee meets the administrative exemption. See 5 C.F.R. § 551.-205.[2] Having been classified as administra-

---

1. Defendants Hallett and Newman are being sued only in their official capacities. (Third Am. Compl. ¶¶ 10, 11)

2. The OPM regulation states in relevant part: An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:

(a) The employee's primary duty consists of work that

(1) Significantly affects the formulation or execution of management policies or programs; or

(2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or

tive employees, plaintiffs received overtime pay at the capped rate pursuant to FEPA, rather than at their regular hourly rate.

In Count I of their Third Amended Complaint, plaintiffs claim that the Customs Service improperly classified them as administrative employees under the OPM regulation and failed to pay them the proper rate of pay for overtime hours in violation of section 216(b) of the FLSA.[3] They contend that they do not meet the primary duty test set forth in the OPM regulation and, therefore, are entitled to overtime pay at one and half times their regular hourly rate, not at the capped rate under FEPA, and liquidated damages equal to the amount of any overtime pay awarded.[4]

In Count II, plaintiffs ask the Court to declare that the OPM regulation which defines administrative employees is invalid. The focus of Count II is on the primary duty test set forth in the OPM regulation upon which the Customs Service relied in determining that plaintiffs are administrative employees. OPM is authorized to administer the FLSA with respect to individuals employed by the federal government. *See* 29 U.S.C. § 204(f). The Department of Labor ("DOL") administers the FLSA with respect to individuals employed in the private and non-federal public sectors. *See generally American Federation of Government Employees v. Office of Personnel Management,* 821 F.2d 761, 770 (D.C.Cir.1987).

It is plaintiffs' position that OPM must exercise its rulemaking authority in a manner consistent with the Secretary of Labor's implementation of the FLSA, *see American Federation of Government Employees,* 821 F.2d at 770, and that, in violation of that requirement, the OPM regulation defining administrative employees is more broad than the comparable DOL regulations. *See* 29 C.F.R. § 541.2(a) and 541.205.[5] Continuing, plaintiffs contend they would not meet the primary duty test under DOL regulations, whereas the Customs Service has classified them as administrative employees under the

---

(3) Involves substantial participation in the executive or administrative functions of a management official.
(b) The employee performs office or other predominantly nonmanual work which is—
  (1) Intellectual and varied in nature; or
  (2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.
(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.
5 C.F.R. § 551.205. Only the primary duty test set forth in subsection (a) is at issue in this case.

3. Section 216(b) of the FLSA states in relevant part:
> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.... An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. 29 U.S.C. § 216(b).

4. Section 216(b) of the FLSA, which entitles an employee to recover liquidated damages, is modified by section 260 of that act. Section 260, which gives courts discretion in determining the amount of liquidated damages to award, if any, states in relevant part:
> In any action ... to recover ... unpaid overtime compensation ... under the [FLSA] ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216.

5. 29 C.F.R. § 541.2 states in relevant part:
> The term 'employee employed in a bona fide ... administrative ... capacity' in section 13(a)(1) of the [FLSA] shall mean any employee:
> (a) Whose primary duty consists of either:
>   (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers ...
> (b) Who customarily and regularly exercises discretion and independent judgment....
> 29 C.F.R. § 541.205 sets forth an expansive definition of the phrase "directly related to management policies" in section 541.2.

OPM regulations. Accordingly, plaintiffs argue that, because they were classified as administrative employees under the more broad OPM regulation, whereas they would not have been so classified under the DOL regulations, the OPM regulation should be declared invalid.

Defendants move to dismiss plaintiffs' Third Amended Complaint on several grounds. First, defendants assert that the Court lacks jurisdiction to entertain plaintiffs' overtime claims which, when they arose, were subject to the negotiated grievance procedures set forth in the collective bargaining agreement between the Customs Service and Customs Service employees. Second, defendants assert that any overtime claims which are not subject to negotiated grievance procedures are within the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act because they exceed $10,000.[6] Third, defendants assert that, with respect to claims which do not exceed $10,000, venue under the Tucker Act does not lie in this district because most of the opt-in plaintiffs do not reside in this district.[7] It is defendants' position that venue in the district court for such claims lies only in the district in which all plaintiffs reside. Because all plaintiffs do not reside in a single district, defendants argue that the suit should have been brought in the Court of Federal Claims. Thus, defendants ask the court to dismiss the action for improper venue. Finally, defendants assert that plaintiffs lack standing to challenge the OPM overtime regulation, or, alternatively, plaintiffs' allegation that the OPM regulation is invalid fails to state a claim upon which relief can be granted.

6. *See infra* discussion of Defendants' Motion to Transfer Count I.

7. As of the time of filing this action, all of the named plaintiffs resided in this judicial district. The opt-in plaintiffs, who filed consent forms to become parties plaintiff after the initial Complaint was filed, reside in numerous judicial districts.

8. Section 1631 states in relevant part:
Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or

Defendants' Motion to Transfer Count I of Plaintiffs' Third Amended Complaint to the Court of Federal Claims in the Alternative to Dismissal asserts that this Court lacks jurisdiction over plaintiffs overtime claims on the ground that the Court of Federal Claims has exclusive jurisdiction over non-tort claims against the United States for money damages in excess of $10,000. Therefore, defendants maintain, if not dismissed, Count I must be transferred to the Court of Federal Claims.

The Court need not address each of defendants' grounds for dismissal as the Court concludes that it lacks jurisdiction over plaintiffs claims for overtime pay and liquidated damages set forth in Count I, and will transfer Count I to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.[8] Jurisdiction over such claims is defined by the Tucker Act and, under that statute, where such claims exceed $10,000, they must be brought in the Court of Federal Claims.[9] Furthermore, under the venue provision applicable to Tucker Act claims which do not exceed $10,000, because many of the opt-in plaintiffs reside in other judicial districts, the action may only be brought in the Court of Federal Claims. *See* 28 U.S.C. §§ 1346 and 1402(a).

With respect to Count II, the Court concludes that plaintiffs have standing to challenge the OPM regulation at issue and have stated a claim upon which relief may be granted. The Court further concludes that the Court of Federal Claims is capable of affording plaintiffs complete relief. Accordingly, Count II will be transferred to that court.

noticed, and the action . . . shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
28 U.S.C. § 1631.

9. Because the Court concludes that it does not have jurisdiction over Count I pursuant to the Tucker Act, defendants' contention that the Court lacks jurisdiction over plaintiffs' overtime claims which, when they arose, were subject to negotiated grievance procedures set forth in the collective bargaining agreement need not be addressed.

## II. DISCUSSION

### A. *Jurisdiction Over Plaintiffs' Claims in Count I Lies In the Court of Federal Claims.*

■ Analysis of this Court's jurisdiction must begin with the Tucker Act which is codified at 28 U.S.C. §§ 1346 and 1491. The Tucker Act creates no substantive right of recovery; rather it waives sovereign immunity and defines the limits of federal jurisdiction in actions against the United States for non-tort money damages. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Chabal v. Reagan,* 822 F.2d 349, 353 (3d Cir.1987). Section 1346, referred to as the Little Tucker Act, states in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the United States [Court of Federal Claims], of: ...
(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

28 U.S.C. § 1346(a). Section 1491, referred to as the Big Tucker Act, states in relevant part:

The United States [Court of Federal Claims] shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

■ ■ Plaintiffs' FLSA claims in Count I are for non-tort money damages against the United States and, therefore, fall within the scope of the Tucker Act. *See Parker v. King,* 935 F.2d 1174, 1178 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992). To the extent plaintiffs' FLSA claims exceed $10,000, such claims are within the exclusive jurisdiction of the Court of Federal Claims and must be transferred to that court. *Parker,* 935 F.2d at 1178; *accord Zellous v. Broadhead Associates,* 906 F.2d 94, 96 n. 3 (3d Cir.1990). For any of plaintiffs claims that do not exceed $10,000, this Court has concurrent jurisdiction with the Court of Federal Claims under the Little Tucker Act.

Ordinarily, the Court would grant plaintiffs leave to amend their Third Amended Complaint in order to waive their right to recover in excess of $10,000 and bring their claims within the scope of the Little Tucker Act, and plaintiffs requested leave to so amend in their Opposition to Defendants' Motion to Dismiss Third Amended Complaint. However, for the reasons set forth in subsection C of this Memorandum, under the Little Tucker Act, venue is not properly laid in this district and, accordingly, leave to amend will not be granted.

### B. *The Court Does Not Have an Alternative Basis for Jurisdiction Over Plaintiffs' Claims in Count I.*

In reliance upon the United States Supreme Court decision in *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), plaintiffs contend that the Court of Federal Claims does not have exclusive jurisdiction over claims against the United States which exceed $10,000. Under this line of reasoning, plaintiffs contend section 216(b) of the FLSA waives the sovereign immunity of the United States and this Court has subject matter jurisdiction pursuant to the federal question jurisdiction statute—28 U.S.C. § 1331—and 28 U.S.C. § 1337.[10]

Plaintiffs also rely on *American National Red Cross v. S.G. and A.E.,* — U.S. —, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), for

---

**10.** 28 U.S.C. § 1331 states:
  The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
  28 U.S.C. § 1337 states in relevant part:

  The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies....

the proposition that section 216(b) of the FLSA, in addition to waiving the sovereign immunity of the United States, constitutes an independent grant of subject matter jurisdiction. The Court will address each of plaintiffs' alternative jurisdiction arguments.

### 1. *Bowen v. Massachusetts*

In *Bowen*, the Supreme Court stated:

It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000. That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that Court's jurisdiction is "exclusive" only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court.

487 U.S. at 910 n. 48, 108 S.Ct. at 2740 n. 48. Plaintiffs maintain that in light of the language in *Bowen*, employees with FLSA claims against the United States need not rely on the Tucker Act as the basis for district court jurisdiction. The Court disagrees with this analysis.

In *Bowen*, the State of Massachusetts brought suit in the Federal District Court for the District of Massachusetts challenging a decision by the Department of Health and Human Services ("HHS") disallowing reimbursement to the state for certain expenditures under the Medicaid program and seeking declaratory and injunctive relief. In its complaint, the state relied on section 702 of the Administrative Procedure Act ("APA") as a waiver of the sovereign immunity of the United States and invoked federal question jurisdiction pursuant to 28 U.S.C. § 1331. Section 702 permits a claimant to pursue an action to review agency action in federal court where the claimant seeks other than money damages. *See* 5 U.S.C. § 702 (1988). The district court reversed the agency's decision and the Court of Appeals for the First Circuit affirmed.

The Secretary of HHS argued in the Supreme Court that section 702 did not authorize review by the district court because the relief sought by the state was in the form of money damages. The Supreme Court disagreed, holding that although the order of the district court reversing the agency's disallowance decision could require the payment of money by the federal government, such an award was for specific relief rather than for money damages and thus was within the jurisdiction of the district court under the waiver of sovereign immunity contained in section 702 of the APA. 487 U.S. at 910, 108 S.Ct. at 2740. The Court distinguished between actions at law for money damages— "which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation"—and equitable actions for specific relief—which attempt to give the plaintiff the very thing to which he was entitled. 487 U.S. at 893–95, 108 S.Ct. at 2731–32.

Plaintiffs' reliance on *Bowen* is somewhat misplaced as *Bowen* is distinguishable from the case presently before the Court. First, because the *Bowen* Court concluded that the relief sought by plaintiffs was specific relief, not money damages, the Tucker Act was not implicated. Second, although plaintiffs' claims for overtime bear some of the indicia of specific relief, the Court need not decide whether such claims are for specific relief,[11] as plaintiffs' claims for liquidated damages clearly fall outside of the definition of specific relief articulated by the Supreme Court in *Bowen*. Claims for liquidated damages under the FLSA have been characterized by the Third Circuit as compensatory damages; "they compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due." *See Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1299 (3d Cir.1991) (*citing Overnight Motor Transportation Co. v. Mis-*

---

11. The Court notes, without deciding the issue, that some courts have considered FLSA claims for overtime to be synonymous with back pay claims. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988); *Doyle v. United States,* 20 Cl.Ct. 495 (1990), *aff'd,* 931 F.2d 1546 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 866, 116 L.Ed.2d 772 (1992); *Brock v. G & W Drive–In,* 1986 WL 15410 (W.D.Ark.1986); *Cook v. United States,* 109 F.R.D. 81 (E.D.N.Y.1985). Back pay has been characterized as money damages. *Hubbard v. Environmental Protection Agency,* 982 F.2d 531, 536 (D.C.Cir.1992) (citation omitted).

*sel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682 (1942); *Martin v. Cooper Electric Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). So characterized, plaintiffs claims for liquidated damages—compensatory damages and, therefore, money damages as defined by the Supreme Court in *Bowen*—render *Bowen* inapplicable.

Jurisdiction over claims for *money damages* against the United States, such as plaintiffs claims for liquidated damages under the FLSA, is governed by the Tucker Act. Where such claims exceed $10,000, the Court of Federal Claims has exclusive jurisdiction. *Zellous,* 906 F.2d at 96 n. 3. Where such claims are less than $10,000 the district court has concurrent jurisdiction with the Court of Federal Claims. *See* 28 U.S.C. 1346(a).

■ Finally, with respect to plaintiffs' contention that the FLSA is a waiver of sovereign immunity and that general jurisdiction statutes such as 28 U.S.C. §§ 1331 and 1337 establish that federal district courts are courts of "competent jurisdiction" within the meaning of the FLSA, the Court disagrees.[12]

Contrary to plaintiffs' position, the legislative history of the FLSA demonstrates that Congress did not intend the FLSA to waive the sovereign immunity of the United States. Section 216(b) of the FLSA, as originally enacted, was enforceable against employers generally, but did not cover federal employees or address waiver of sovereign immunity.[13] Section 203 was amended in 1974 to expand the definition of employer to include a "public agency." *See* 1974 U.S.C.C.A.N. 2811. Section 216(b) was also amended in 1974 to extend coverage under the act to federal, state and local public employees. *Id.* As amended, the relevant portion of section 216(b) reads as follows: "An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction." The 1974 amend-

ment to the FLSA did not address sovereign immunity.

The cases relied upon by plaintiffs in their Opposition to Defendants' Motion to Dismiss Third Amended Complaint are inapposite. *See C.H. Sanders Co. v. BHAP Housing Development Fund Co.,* 903 F.2d 114 (2d Cir.1990); *Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644 (5th Cir.1980); *Bor-Son Building Corp. v. Heller,* 572 F.2d 174 (8th Cir.1978); *Trans–Bay Engineers and Builders, Inc. v. Hills,* 551 F.2d 370 (D.C.Cir. 1976). In those cases, the statutes relied upon as the waiver of sovereign immunity were part of the National Housing Act which expressly permitted suit against the Secretary of Housing for certain claims, not a general statute such as the FLSA to which public agencies were later added.

Plaintiffs cite no direct authority for the proposition that the FLSA waives the sovereign immunity of the United States and the Court has found only one reported case that has reached such a conclusion. *See Huddleston v. Donovan,* 524 F.Supp. 179, 181 (N.D.Ill.1981) (section 216(b) creates a waiver of sovereign immunity but does not itself confer jurisdiction, referring instead to courts of "competent jurisdiction"). The Court chooses not to follow the *Huddleston* court's conclusion with respect to the issue of sovereign immunity.

Given the fact that, with no reference to sovereign immunity, public agencies were added to the FLSA, a previously existing statute which did not address sovereign immunity, and the scant authority supporting plaintiffs' position, the Court cannot conclude that the intent of Congress, in enacting and amending the FLSA, was to waive sovereign immunity. Thus, the Court holds that the waiver of sovereign immunity applicable to plaintiffs' claims is found in the Tucker Act.

**2. *American National Red Cross v. S.G.***

In *Red Cross,* the Supreme Court held that the "sue and be sued" provision of the American National Red Cross charter, which spe-

---

**12.** *See supra* note 3 for the text of section 216(b) of the FLSA.

**13.** Prior to the 1974 amendments, the relevant portion of section 216(b) read as follows: "Ac-

tion to recover such liability may be maintained in any court of competent jurisdiction...." 29 U.S.C. § 216(b) (1965).

cifically mentioned federal courts, conferred original jurisdiction on federal courts over all cases in which the Red Cross is a party. *Id.* —— U.S. at ——, 112 S.Ct. at 2472; 36 U.S.C. § 2.[14] The Court explained that federal court jurisdiction is provided by such a statute "if, but only if, it specifically mentions the federal courts." Plaintiffs contend that, by analogy to the sue and be sued language of the Red Cross charter, the FLSA is an independent grant of jurisdiction. The Court concludes that the holding of *Red Cross* is not capable of the broad proposition for which it is cited by plaintiffs.

First, the Court has already concluded that the FLSA does not waive sovereign immunity and, therefore, plaintiffs must rely on the Tucker Act for such waiver. The Tucker Act, in addition to defining the scope of the United States' consent to be sued for non-tort money damages, defines the limits of federal district court jurisdiction where the United States is the defendant.

Second, in reaching its conclusion that the Red Cross charter conferred original jurisdiction upon federal courts, the Supreme Court examined the history of the Congressional charter under which the Red Cross was created, and its prior decisions in which the jurisdictional consequences of other Congressional charters were analyzed. —— U.S. at —— – ——, 112 S.Ct. at 2468–70. In contrast, the legislative history of the FLSA, and the case law interpreting that act, do not demonstrate an intent on the part of Congress to confer original jurisdiction over FLSA actions upon federal district courts.

■ Third, the FLSA—a statute which confers upon covered employees the substantive right to recover overtime pay and liquidated damages from an employer (including the United States)—is distinguishable from the Congressional charter under which the Red Cross was established as a "body corporate and politic" and vested with certain powers. *See* 36 U.S.C. §§ 1, 2. Section 216(b) includes additional qualifying language which is not present in the Red Cross charter—that suit may be maintained in federal or state

courts *of competent jurisdiction.* See e.g. *Brown v. General Services Administration,* 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976) (as a general rule, specific jurisdictional statutes control over general statutes); *Parker,* 935 F.2d at 1178. The "competent jurisdiction" language illustrates that the FLSA itself does not confer jurisdiction, but rather relies upon other jurisdictional statutes to define which courts are competent to entertain FLSA claims. Where the employer/defendant is the United States government, competent jurisdiction is specifically defined by Tucker Act. *Huddleston,* 524 F.Supp. at 181; *see also Parker,* 935 F.2d at 1178. Thus, the Court concludes that the express provisions of the Tucker Act control over the general jurisdictional statutes relied upon by plaintiffs—28 U.S.C. §§ 1331 and 1337. *Brown,* 425 U.S. at 833, 96 S.Ct. at 1968.

### C. Venue Does Not Lie in This District Under the Little Tucker Act.

In order to accord plaintiffs the option of remaining in the district court where their monetary claims against the United States exceed $10,000, courts have generally permitted plaintiffs to waive their right to recover in excess of $10,000 so as to bring their claims within the scope of the Little Tucker Act. *Chabal,* 822 F.2d at 357; *Hahn v. United States,* 757 F.2d 581, 587–88 (3d Cir. 1985). In this case, such an amendment would be futile.

■ The venue provision applicable to claims which are governed by the Little Tucker Act states in relevant part: "[a]ny civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted *only:* ... (2) in the judicial district *where the plaintiff resides....*" 28 U.S.C. § 1402(a) (emphasis added). The weight of authority holds, and the Court agrees, that under the Little Tucker Act, venue must be satisfied for each plaintiff. *See Davila v. Weinberger,* 600 F.Supp. 599 (D.D.C.1985); *see also*

---

**14.** The relevant portion of the Red Cross charter states: " 'The American National Red Cross' ... shall have ... the power to sue and be sued in

courts of law and equity, State or Federal, within the jurisdiction of the United States...."

*Brooks v. Weinberger,* 637 F.Supp. 22, 24 (D.D.C.1986) (venue in the district court under the Little Tucker Act was only proper with respect to individuals who reside in that district); *National Treasury Employees' Union v. Reagan,* 629 F.Supp. 762, 765 (D.D.C. 1985) (claims of non-residents dismissed under 28 U.S.C. § 1402(a) for improper venue), *aff'd,* 806 F.2d 1034 (Fed.Cir.1986), *cert. denied,* 481 U.S. 1068, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987).

In *Davila,* the District Court for the District of Columbia held that "the [Little] Tucker Act requires plaintiffs to litigate their claims only in the district in which they individually reside, or in the Claims Court." 600 F.Supp. at 604. The *Davila* court concluded that the history and purpose of the Little Tucker Act "embody Congress' deliberate efforts to channel certain types of cases to the [Court of Federal Claims] ... while allowing other claims to be heard concurrently by certain district courts." *Davila,* 600 F.Supp. at 604. The court further explained that the Little Tucker Act venue provision "was deliberately drafted to carve out a narrow exception to the jurisdiction of the Court of Claims"—to give persons with relatively small claims the option of bringing suit in the district where they and their witnesses reside.[15] *Id; see also* 1964 U.S.C.C.A.N. 3254 (in rare cases where claim for back pay exceeds $10,000, it would not be an undue hardship for claimant to bring suit in the Court of Federal Claims, *as provided in the present law* ). Such provision was not intended to diminish Court of Federal Claims jurisdiction over suits involving plaintiffs who reside in multiple judicial districts.

■ The propriety of venue in this district was properly raised by defendants in their Motion to Dismiss Plaintiffs' Third Amended Complaint. Accordingly, the Court will assess the venue issue on the basis of circumstances as they existed at the time

such Motion to Dismiss was filed. *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1200 (8th Cir.1990). As of that time, the six original plaintiffs, all residents of the Eastern District of Pennsylvania, had been joined by numerous opt-in plaintiffs who reside in multiple judicial districts.

Based on the foregoing discussion, the Court concludes that, because the opt-in plaintiffs reside in multiple judicial districts, the only forum in which plaintiffs can pursue their claims in a single action is the Court of Federal Claims. Accordingly, plaintiffs will not be granted leave to amend their Third Amended Complaint to limit their right to recover in excess of $10,000.

■ Plaintiffs contend that the Little Tucker Act venue provision is inapplicable on the ground that this Court has federal question jurisdiction under one of the alternatives previously addressed and, therefore, the federal question venue provision—28 U.S.C. § 1391—is applicable, not the Little Tucker Act venue provision.[16] Because the Court has addressed and rejected plaintiffs' alternative jurisdiction argument and concluded that jurisdiction is governed by the Tucker Act, the federal question venue provision is inapplicable.

Plaintiffs rely on *Exxon Corp. v. Federal Trade Commission,* 588 F.2d 895, 898–99 (3d Cir.1978), for the proposition that, because the language of the Little Tucker Act venue provision—28 U.S.C. § 1402(a)—and the federal question venue provision—28 U.S.C. § 1391(e)—is substantially similar, such language should be interpreted in a similar manner. In *Exxon,* the Third Circuit held that, in multiple plaintiff cases under section 1391(e), venue is satisfied where at at least one plaintiff resides in the judicial district. 588 F.2d at 898. Plaintiffs argue that section 1402(a) should be interpreted in a similar manner. The Court rejects this position.

---

**15.** Prior to passage of the Tucker Act, claims which could be asserted against the United States were extremely limited and had to be brought in the Court of Claims, predecessor to the Court of Federal Claims. *Id.* at 604 n. 3; *see also* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3657 at 213 (1976).

**16.** Section 1391(e) states in relevant part:
A civil action in which a defendant is an officer or employee of the United States or any agency thereof ... may, except as otherwise provided by law, be brought *in any judicial district in which ... the plaintiff resides.*
28 U.S.C. § 1391(e) (emphasis added).

Although the *Exxon* court held that "[t]here is no requirement that all plaintiffs reside in the forum district," in so ruling, the court's major concern was to avoid an unnecessary multiplicity of litigation which would result from a ruling that venue had to be satisfied for each plaintiff. *Id.* at 898. However, *Exxon* is not directly on point whereas *Davila* and its progeny address the precise issue before the Court.

The history and purpose underlying section 1402(a), articulated by the *Davila* court and summarized above, warrant an interpretation which differs from section 1391(e). Moreover, the language of sections 1391(e) and 1402(a) differ in one significant respect. Section 1391(e) permits an action to be brought in *any* judicial district in which the plaintiff resides whereas section 1402(a) is more limited in that it permits an action to be brought *only* in the judicial district where the plaintiff resides. The more restrictive language of the Little Tucker Act venue provision supports this Court's interpretation of section 1402(a).

Finally, the *Davila* court analyzed *Exxon* and concluded that "[i]n light of the unique and purposeful structure of the Tucker Act" the argument that section 1402(a) should be interpreted the same as section 1391(e) was unpersuasive. 600 F.Supp. at 605. In view of the purpose of the Little Tucker Act to provide a convenient forum for adjudication of small claims, multiplicity of litigation could not have been a concern of Congress when the Little Tucker Act venue provision was enacted. Moreover, the *Davila* court pointed out the danger of forum shopping which would exist in cases involving hundreds of plaintiffs from numerous jurisdictions if only one plaintiff satisfied the section 1402(a) residence requirement. *Id.* at 604.

D. *The Court of Federal Claims is Capable of Affording Complete Relief and Count II Will Be Transferred to that Court.*

Plaintiffs' claims for declaratory and injunctive relief in Count II are based on the same facts as plaintiffs' claims for overtime pay and liquidated damages in Count I. Plaintiffs contend that federal district court is the only forum which is competent to adjudicate the claims set forth in Count II of their Third Amended Complaint because the Court of Federal Claims does not have the power to declare the OPM regulation invalid.

■ As a threshold matter, the Court concludes that plaintiffs have standing to challenge the OPM regulation under which they were classified as administrative employees. Count II of plaintiffs' Third Amended Complaint states a case or controversy, and plaintiffs allege actual injury as a result of defendants' reliance upon and interpretation of the OPM regulation. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Moreover, Count II states a claim upon which relief may be granted—improper classification of plaintiffs as administrative employees under the OPM regulation in violation of the FLSA.

■ Where a claim for money damages against the United States, which is governed by the Tucker Act, is joined with a claim for injunctive or declaratory relief, the test for determining whether the district court can assume jurisdiction over the equitable claim is whether "the declaratory relief a claimant seeks has significant prospective effect or considerable value apart from merely determining monetary liability of the government." *Hahn v. United States,* 757 F.2d 581, 590 (3d Cir.1985); *accord Matthews v. United States,* 810 F.2d 109, 111 (6th Cir. 1987); *Minnesota v. Heckler,* 718 F.2d 852, 858 (8th Cir.1983). If the requested equitable relief has such significant prospective effect or considerable value that it, not the compensatory money payments, is the primary relief sought, the district court has jurisdiction over the equitable claim. *Heckler,* 718 F.2d at 859. However, the test articulated in *Hahn* is not intended to derogate from the Court of Federal Claims' sphere of exclusive jurisdiction. 757 F.2d at 590. If the equitable relief does not have such significant prospective effect or considerable value, and the Court of Federal Claims is capable of affording complete relief, the district court should not permit

plaintiffs to avoid bringing their entire action in that court by artful pleading. *Id.* ˒

█ Although the relief sought in Count II could have some prospective effect or value apart from determining monetary liability of the United States, on the record before the Court, it cannot be said that such prospective effect or value is either significant or considerable. Plaintiffs' equitable claims are not on the level of magnitude of the constitutional claims which were at issue in *Hahn. See* 757 F.2d 581. Moreover, the equitable relief sought by plaintiffs in Count II is inextricably intertwined with their claims for overtime pay and liquidated damages in Count I. Finally, plaintiffs' claims for overtime pay and liquidated damages in Count I is the primary relief requested, not the equitable relief sought in Count II. *Heckler,* 718 F.2d at 859.

█ Plaintiffs are correct that, generally, the Court of Federal Claims does not have the authority to grant prospective equitable relief. *Bowen,* 487 U.S. 879, 108 S.Ct. at 2737 (1988); *Richardson v. Morris,* 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). However, the Big Tucker Act was amended in 1972 to give the Court of Federal Claims the authority to grant equitable relief. *See* 28 U.S.C. 1491(a)(2). The Court of Federal Claims' equitable powers are defined as follows:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, ... and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2). Although the equitable powers of the Court of Federal Claims are limited, it is capable of affording complete relief in this case.

The Court of Federal Claims is capable of determining whether, as defendants contend, some of plaintiffs overtime claims were subject to negotiated grievance procedures set forth in the collective bargaining agreement between the parties and, if so, whether plain-

tiffs must pursue such procedures in lieu of their action in court. *See generally Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990) (Pursuant to the Civil Service Reform Act, where federal employees are covered by a collective bargaining agreement under which overtime claims are subject to negotiated grievance procedures, the grievance procedures are the exclusive mechanism for resolution of such claims).

The Court of Federal Claims is also capable of determining whether plaintiffs have been properly classified as administrative employees under the FLSA, even if such a determination requires a ruling on the relationship between the OPM and DOL regulations promulgated under the FLSA and a finding that it was inappropriate for the Customs Service to rely on the OPM regulation which plaintiffs contend is more broad than DOL regulations. If the Court of Federal Claims determines that plaintiffs have been improperly classified, that court can order the Customs Service to restore plaintiffs to their appropriate duty status and award plaintiffs any overtime pay which is due and, if warranted, liquidated damages. 28 U.S.C. § 1491(a)(2).

The course adopted by the Court promotes the interest of judicial economy and efficiency by having the entire case adjudicated in one forum. That is preferable where, as here, the Court of Federal Claims can provide complete relief to plaintiffs.

### III. CONCLUSION

Having determined that this Court lacks jurisdiction over Count I and, with respect to Count II, having concluded that the Court of Federal Claims is capable of affording complete relief, the Court will transfer Counts I and II of Plaintiffs' Third Amended Complaint to the Court of Federal Claims.

An appropriate order will follow.

### ORDER

**AND NOW,** to wit, this 3rd day of August, 1993, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (Document No. 47), Defendants'

Supplemental Memorandum In Support of Motion to Dismiss Plaintiffs' Third Amended Complaint (Document No. 48), Plaintiffs' Opposition to Defendants' Motion to Dismiss Third Amended Complaint (Document No. 49), Defendants' Second Supplemental Memorandum In Support of Motion to Dismiss Plaintiffs Third Amended Complaint (Document No. 51), Plaintiffs' Response to Defendants' Second Supplemental Memorandum In Support of Motion to Dismiss Plaintiffs' Third Amended Complaint (Document No. 52), Defendants' Motion to Transfer Count I of Plaintiffs' Third Amended Complaint to the United States Court of Federal Claims, In the Alternative to Dismissal (Document No. 57), and Plaintiffs' Memorandum In Opposition to Defendants' Motion to Transfer (Document No. 60), after a hearing on the Motion to Dismiss Plaintiffs' Third Amended Complaint on December 29, 1992, and for the reasons set forth in the Memorandum accompanying this Order, **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint is **DENIED** and Defendants' Motion to Transfer Count I of Plaintiffs' Third Amended Complaint to the United States Court of Federal Claims, In the Alternative to Dismissal, is **GRANTED.**

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1631, and for the reasons set forth in the Memorandum accompanying this Order, Count II of Plaintiffs' Third Amended Complaint is transferred to the United States Court of Federal Claims.