PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2655
_____

JOANNE  R. SCHEAFNOCKER,
Appellant

vs.

COMMISSIONER OF INTERNAL REVENUE SERVICE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 2-08-cv-00278)
District Judge:  The Honorable Arthur J. Schwab
_____

ARGUED MAY 19, 2010

BEFORE: FUENTES, HARDIMAN,
and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed April 19, 2011 )
_____

William C. Kaczynski, Esq. (Argued)
1008 Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
                Counsel for Appellant

Kathleen E. Lyon, Esq. (Argued)
Teresa E. McLaughlin, Esq.
United States Department of Justice Tax Division
950 Pennsylvania Avenue, NW
PO Box 502
Washington, DC 20044

Henry C. Darmstadter, Esq.
Yonatan Gelblum, Esq.
United States Department of Justice
Tax Division, Civil Trial Section
P. O. Box 683
Ben Franklin Station
Washington, DC 20044
                Counsel for Appellee

_____

OPINION OF THE COURT
_____


PER CURIAM.

Joanne Scheafnocker appeals the District Court's order dismissing her complaint, on a finding that her wrongful levy

2

claim is time-barred. She raises procedural due process issues because she did not receive any notice that the IRS had levied funds she held jointly with her ex-husband. We conclude that Scheafnocker has sufficiently pleaded a constitutional claim with a distinct basis for jurisdiction. Therefore, we will vacate the District Court's order, and remand the cause for it to consider the merits of her due process claim.

I.

The merits of Scheafnocker's wrongful levy claim are undeveloped because the time-bar issue has been the focus of review in every instance. Therefore, we briefly recite background information provided in the complaint, along with the procedural history of the case.[1]

Appellant Joanne Scheafnocker and her ex-husband Fred Scheafnocker divorced in 1983. Joanne Scheafnocker filed a child support case in Texas state court, where Fred Scheafnocker lives. In 1988, Joanne placed a jointly issued check, the proceeds from the sale of their marital home, in a certificate of deposit from Equibank in North Huntingdon, Pennsylvania. The certificate of deposit, issued in her name and that of her ex-husband, was to be left untouched pending settlement of the child support case.[2] From the record, it is apparent that she later moved to California.

---

[1] We accept as true all of the allegations contained in the complaint and draw reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

[2] The certificate of deposit bore the following notation: "Our

3

The record also states that on October 7, 2002, the Internal Revenue Service assessed trust fund recovery penalties against Fred Scheafnocker and sent him a Notice to Levy for his failure to turn over taxes that he withheld from employees of his business in Texas. The government levied the funds jointly held by Fred and Joanne Scheafnocker in the North Huntingdon bank on May 30, 2003. Approximately fourteen months later, in July 2004, Joanne Scheafnocker attempted to make a deposit into the account to "keep the account active," discovering then that the funds were gone and that the account was closed. She learned of the levy at this time.[3] The government admits that it never sent Joanne Scheafnocker any notice of the levy.

Joanne Scheafnocker filed pro se an IRS Form 911 for taxpayer assistance in August 2004. The Taxpayer Advocate denied the claim as time-barred on January 3, 2005. On or about March 29, 2005, Scheafnocker filed pro se a "Petition for Lien or Levy Action" with the Tax Court, which dismissed her claim on May 31, 2005 for lack of jurisdiction. In that petition, she

_____

terms - to be held in lieu of Texas court C.S. case resolution. J.S." The record does not explain why the child support issue has remained unresolved for such a protracted period of time.

[3] In her complaint, Scheafnocker states that she attempted to make a deposit two years after the levy. The appellate record corrects this time-frame to fourteen months. This error does not materially alter her claim. Her brief also explains that she contacted the bank at that time to make a deposit of $100 on the account, mindful of an earlier notice she had received from the Bank advising her that inactive accounts risk forfeiture to the Commonwealth of Pennsylvania.

4

stated that the government failed to provide her with any notice of the levy. Scheafnocker then filed pro se, on October 4, 2005, a complaint in the District Court for the Eastern District of California, where she resides. In the pro se civil cover sheet, she describes her claim as a "violation of due process rights under Fifth and Fourteenth Amendment [sic]." She alleges "[p]laintiff, as co-owner, was never notified either by IRS or bank, denying any opportunity to make timely objection." In her prayer for relief, she states the following.

> 1. That this Court provide opportunity for Plaintiff to show all evidence and proof; 2. That judgment be entered in favor of Plaintiff and against Defendant; 3. That entire amount of CD at time of seizure, plus bank interest from that day to the present, be returned to Plaintiff; 4. That additional interest accrue for non-payment over 30 days from judgment; 5. That Plaintiff be awarded reimbursement for all related legal costs such as filing, and other further relief as this jury and court deem just and proper.

Complaint 3, ECF No. 1.

The government filed a motion to dismiss asserting *inter alia* that the District Court lacked jurisdiction because the suit (interpreted as a wrongful levy claim brought under 26 U.S.C. §

5

7426) was time-barred, and because the government had sovereign immunity from her claims. Upon the recommendation of the Magistrate Judge, the District Court ruled that Scheafnocker's wrongful levy claim could be regarded as a tax refund claim and, as such, deemed timely filed.[4] The District Court then ordered the government to file an answer to Scheafnocker's suit. However, shortly after the government filed an answer, the Supreme Court held in an unrelated case that wrongful levy claims cannot be construed as refund claims. *See EC Term of Years Trust v. United States*, 550 U.S. 429 (2007). As a result, the District Court vacated its order.

The government then filed a motion for judgment on the pleadings, reiterating its general jurisdictional arguments and asserting that the Eastern District of California was not the proper venue for this suit. On February 4, 2008, the Magistrate Judge issued findings and a recommendation to deny the motion on the basis that, under precedent from the Court of Appeals for the Ninth Circuit, wrongful levy claims are subject to equitable tolling. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-1207 (9th Cir. 1995). However, on February 19, 2008, the Magistrate Judge vacated this order stating the following.

> [T]he court stands by its findings in the February 4, 2008, findings and recommendations, but vacates them insofar as they recommend further adjudication on its merits. The

---

[4] The statute of limitations for a tax refund claim is two years from the time the tax was paid. 26 U.S.C. § 6511(a).

6

merits of this action shall be adjudicated in the appropriate district court pursuant to 28 U.S.C. § 1402(c). This action is transferred to the United States District Court for the Western District of Pennsylvania.

Order 5, ECF No. 52.[5]

Upon transfer of the case to the District Court for the Western District of Pennsylvania, the government filed a motion to dismiss for lack of jurisdiction, arguing that the claim was time-barred. The District Court granted the government's motion, ruling that equitable tolling of a wrongful levy claim is not permitted. *See Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340 (3d Cir. 2000).

## II.

Scheafnocker does not challenge our opinion in *Becton*, which prohibits equitable tolling of wrongful levy claims brought under section 7426. *See id.* Instead, based upon the law of the case doctrine, she argues that the District Court erred by failing to apply *Supermail*, which permits equitable tolling.

---

[5] 28 U.S.C. § 1402(c): "Any civil action against the United States under subsection (e) of section 1346 of this title may be prosecuted only in the judicial district where the property is situated at the time of levy, or if no levy is made, in the judicial district in which the event occurred which gave rise to the cause of action."

Scheafnocker also raises a due process claim arising from a lack of notice. The law of the case argument is unavailing, but we do find that Scheafnocker has sufficiently pleaded a due process claim for which the District Court has jurisdiction.

A.

"The 'law of the case . . . doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Feesers, Inc. v. Michael Foods, Inc*., 591 F.3d 191, 207 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). We have a long history of adherence to the law of the case doctrine as a means of promoting not only finality, consistency and judicial economy, but also comity with other courts. *See, e.g., Gulf Research & Development Co. v. Leahy*, 193 F.2d 302, 304 (3d Cir. 1952). The Supreme Court has also directed that although "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California,* 460 U.S. at 618 n. 8).

When a magistrate judge has been directed by a district court to conduct hearings and issue a report and recommendation, such findings do not carry the force of law until accepted by the district court. *Continental Cas. Co. v. Dominick D'Andrea, Inc*., 150 F.3d 245, 250 (3d Cir. 1998). Here, the Magistrate Judge issued the findings and recommendation on February 4, 2004. Fifteen days later, before

8

the District Court ruled on it, the Magistrate Judge vacated the findings and recommendation and transferred the case.[6] This makes it clear to us that there is nothing to which the District Court for the Western District of Pennsylvania owed any deference. The Magistrate Judge's order does contain some confusing language, to wit: "the court stands by its findings in the February 4, 2008, findings and recommendations." Order 5, ECF No. 52. These words, however, do not transform the Magistrate Judge's unreviewed and ultimately vacated recommendation into the law of the case.[7] Accordingly, with respect to Scheafnocker's wrongful levy claims, we find no error in the District Court's reliance upon *Becton* rather than *Supermail* on the issue of whether equitable tolling is available in wrongful levy claims brought under section 7426.[8]

---

[6] The Magistrate Judge is empowered to issue the transfer order, which is non-dispositive, without the approval of the District Court. 28 U.S.C. § 636(b)(1)(A).

[7] We further note that the transfer of the case to the Western District of Pennsylvania was dictated by 28 U.S.C. § 1402(c), which expresses in unqualified terms the intention of Congress to adjudicate wrongful levy suits in the jurisdiction of the situs of the res.

[8] In *Becton*, we found that, because the plaintiff was suing the United States, "sovereign immunity is implicated." *Becton,* 215 F.3d at 345. Sovereign immunity dictates that a private litigant cannot sue the United States unless the suit fits within a waiver to this immunity that is legislated by Congress. *Block v. North Dakota ex. rel. Bd. of University and School Lands*, 461 U.S. 273, 287 (1983); *see also White-Squire v. United States Postal Service,* 592 F.3d 453, 456 (3d Cir. 2010). We held that,

9

B.

Scheafnocker's pro se complaint, however, also articulates a procedural due process claim that is distinct from her wrongful levy claim. It is axiomatic that an "'elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Nu-Look Design, Inc. v. C.I.R.,* 356 F.3d 290, 295 (3d Cir. 2004) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 232 (3d Cir. 2008). Scheafnocker contends, and the government admits, that the Internal Revenue Service did not give her any notice of the levy or her right to challenge it. She asserts that the government's failure to provide notice denied her of any opportunity to have the merits of her wrongful levy claim reviewed. Because her cause was denied by the Tax Advocate and was dismissed by the District Court as untimely, depriving her a review of the merits of her claim, her assertion of constitutional harm has substance. We, therefore,

_____

although section 6532 waives sovereign immunity to allow wrongful levy claims against the government, the time limitations expressed therein must be strictly construed. *Becton,* 215 F.3d at 345. As a result, we held that "the failure to file a timely wrongful levy claim prior to the expiration of the time limitation in section 6532(c) deprives the district court of subject matter jurisdiction." *Id.* at 353. *Becton,* therefore, eliminates the District Court's jurisdiction over Scheafnocker's suit to the extent that she asserts a wrongful levy claim.

10

must ascertain whether the District Court has jurisdiction to review her due process claim.[9]

The government argues that the District Court lacks jurisdiction because Scheafnocker's suit, however characterized, is barred by sovereign immunity. We apply the rule that the federal government is generally immune from suit, except where Congress has expressly articulated an exception to the immunity. *Becton,* 215 F.3d at 345; *Matsko v. United States,* 372 F.3d 556, 558 (3d Cir. 2004). However, Scheafnocker seeks two different remedies for the alleged constitutional due process violation: she requests money damages, or in the alternate, an opportunity to present the merits of her wrongful levy claim. As we will explain below, Scheafnocker's due process claim for money damages is barred by sovereign immunity. However, we conclude that, to the extent that she seeks a purely procedural remedy, the District Court does have jurisdiction to consider her claim.

Jurisdiction for constitutional claims seeking money damages against the United States is grounded in the Tucker Act. 28 U.S.C. § 1491(a). The Act authorizes the Court of Claims to "render judgment upon any claim against the United States founded . . . upon the Constitution." *Id.*; *see also United States v. Testan*, 424 U.S. 392, 399 (1976); *Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987). Moreover, the District Court

---

[9] "'[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.'" *White-Squire*, 592 F.3d at 456 (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citation omitted)).

is authorized to hear Tucker Act claims that do not exceed $10,000.  28 U.S.C. § 1346(a)(2); *Chabal*, 822 F.2d at 353.  However, the Tucker Act is only a jurisdictional statute and does not independently create any substantive rights enforceable against the United States for money damages.  *Testan*, 424 U.S. at 398; *DiLuigi v. Kafkalas,* 584 F.2d 22, 23 n. 2 (3d Cir. 1978).  This is problematic for Scheafnocker's claim for money damages.

"[I]t is well settled that there is no Tucker Act jurisdiction over a claim founded solely on a fifth amendment procedural due process claim, because '[t]he Due Process Clause simply cannot be read to mandate money damages be paid.'" *Radin v. United States*, 699 F.2d 681, 685 n. 8 (4th Cir. 1983) (quoting *Alabama Hospital Association v. United States,* 656 F.2d 606, 609 (Ct. Cl. 1981)).  Therefore, even if we were to dismiss this cause without prejudice so that it might be filed in the Court of Claims, or authorize the plaintiff to waive damages in excess of $10,000 to enable the District Court to hear the claim, Scheafnocker does not have a basis to claim a substantive right to money damages.  As a result, we conclude that the District Court does not have jurisdiction to consider Scheafnocker's constitutional due process claim, to the extent she seeks monetary relief.

Scheafnocker, however, also requests a purely procedural remedy.  In her prayer for relief she states the following: "that this Court provide opportunity for Plaintiff to show all evidence and proof." Complaint 3, ECF No. 1.  She seeks an opportunity to present her challenge to the levy so that it can be judged on its merits, a  review that she asserts was foreclosed because the lack of notice prevented her from filing the claim earlier.

As noted earlier, the United States government has sovereign immunity from suits against it except where Congress has expressly articulated an exception. *Becton,* 215 F.3d at 345. Certainly, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Although this broad grant of authority encompasses causes such as Scheafnocker's, the paramount issue in this case is whether it can be said that Congress has expressly waived sovereign immunity for the type of claim raised here. We conclude that it has.

In 1976, Congress amended 28 U.S.C. § 1331, eliminating the $10,000 jurisdictional amount in cases where the suit is filed against "the United States, any agency thereof, or any officer or employee thereof in his official capacity." 28 U.S.C. 1331 Historical and Statutory Notes; *see also* Pub. L. No. 94-574. Simultaneously, Congress amended 5 U.S.C. § 702 (the Administrative Procedures Act) to its current form, which states the following.

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an

13

official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

The amendment to section 702 was described as "remov[ing] three technical barriers to the consideration on the merits of citizens' complaints against the Federal Government, its agencies or employees." H.R. Rep. No. 94-1656 (1976). One "technical barrier" addressed in the amendment was "remov[ing] the defense of sovereign immunity as a bar to judicial review of federal administrative action otherwise subject to judicial review." 5 U.S.C.A. § 702, Historical and Statutory Notes. Moreover, in reference to the 1976 amendment to section 1331, the Supreme Court said "[t]he obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Califano v. Sanders,* 430 U.S. 99, 105 (1977). Finally, we note that, in 1980, Congress amended section 1331 again, eliminating the $10,000 jurisdictional amount in all federal question claims. Federal Question Jurisdictional Amendments Act of 1980, Pub. L. No. 96-486; *see* H.R. Rep. No. 96-1461 (1980). We read in these amendments an unmistakable, express intent by Congress to create an exception to sovereign immunity precisely in cases in which a person raises a non-monetary claim, such as a

14

constitutional due process claim, against an agency of the federal government.

We are aware that the amendments to Section 1331 and Section 702 "[do] not confer authority to grant relief if any other statute granting consent to suit expressly or impliedly forbids the relief which is sought." H.R. Rep. No. 94-1656. Typically, suits that challenge the procedures used by the Internal Revenue Service to collect taxes are blocked by the Anti-Injunction Act. The Act prohibits any suit that seeks to "[restrain] the assessment or collection of any tax . . . ." 26 U.S.C. § 7421(a).[10] Yet, in this case, the government levied the bank account in 2003. Joanne Scheafnocker's suit does nothing to restrain the collection of taxes because the funds in the account were long ago applied to Fred Scheafnocker's tax debt, making the Anti-Injunction Act bar inapplicable here. Therefore, we conclude that the District Court has jurisdiction to consider Scheafnocker's due process claim.

Nonetheless, to survive the government's motion to dismiss, Scheafnocker's complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

---

[10] "Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

15

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, Scheafnocker must plead sufficient facts to assert a taking of her property by the government without '"notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Nu Look Design, Inc.*, 356 F.3d at 295 (quoting *Mullane*, 339 U.S. at 314).

Scheafnocker pleads, and the government concedes, that the government levied funds from a bank account jointly held by Scheafnocker and her ex-husband. We find that this sufficiently pleads both a property interest and a "taking" that invokes constitutional due process rights. *See Finberg v. Sullivan*, 634 F.2d 50, 56 (3d Cir. 1980). Scheafnocker also pleads that she was completely unaware of the levy, asserting in her complaint that the government never notified her of the levy, and that she did not discover it until she attempted to make a deposit to the account after the statute of limitations for wrongful levy claims had passed. We conclude that these facts amply plead a claim that the government violated the constitution by failing to provide her notice that was reasonably calculated to apprise her of the levy. For all of these reasons, we hold that her complaint provides enough facts to ground a plausible due process claim.

The remaining question is whether we should consider the merits of this matter, or remand the cause to the District Court to address the due process issue in the first instance. We note that there was no motion for summary judgment filed and that there is no indication that the parties have engaged in discovery. Rather, this appeal was brought before us after the District Court's ruling on a motion to dismiss, or in the

16

alternative, for judgment on the pleadings. Further, the fact–if it is indeed a fact–that bank statements are normally sent to account holders on a monthly basis could be taken to support the conclusion that the Government's efforts are "reasonably calculated" to afford account holders notice of a levy. *See Kaggen v. Internal Revenue Service*, 71 F.3d 1018, 1020 (2d Cir. 1995); *cf. Mullane*, 339 U.S. at 315 ("The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.") (citation omitted).

Thus, we believe the District Court should develop the factual record as to whether there was in this case "notice reasonably calculated" to apprise co-owners of levied assets of the levy. *Nu-Look Design, Inc*. 356 F.3d at 295 (quoting *Mullane*, 339 U.S. at 314). In this regard, the record should be developed to show, among other things: (1) whether and, if so, when Scheafnocker ever received notice from the bank (as opposed to the Government, which concedes that it never sent her notice); (2) whether the bank sent notice to Scheafnocker; (3) whether Scheafnocker kept the bank apprised of any changes of address that she may have made; (4) whether it is the bank's normal practice to send notice to joint owners of an account, either on a monthly basis or when an account has been levied; (5) what the common practices of other banks are in terms of sending notice; and (6) what the IRS's understanding is of banks' practices in terms of sending notice to joint owners of accounts. For these reasons, we will vacate the order of the District Court and remand the cause for further proceedings that are consistent with this opinion.

17

NYGAARD, Circuit Judge, <u>Concurring</u>.

Although I concur in the holding that the District Court erred by dismissing the due process claim, I disagree that a remand to the District Court to consider the due process claim is warranted.[1] Indeed, while noting that "[t]he constitutionality of the levy procedure [section 7426] . . . 'has long been settled'" the Supreme Court specifically invited a review of the very legal question Scheafnocker now raises. *United States v. National Bank of Commerce*, 472 U.S. 713, 721 (1985) (quoting *Phillips v. Commissioner*, 283 U.S. 589, 595 (1931)).

The Supreme Court described the levy process as "an effective and inexpensive administrative remedy for the return of property." *National Bank of Commerce*, 472 U.S. at 728. Yet, in a crucial footnote, the Court also said the following.

> We do not pass upon the constitutional questions that were addressed by the District Court, but not by the Court of Appeals, concerning the adequacy of the notice provided by § 6343(b) and § 7426 to persons with competing claims to the levied property. There is nothing in the sparse record in this case to indicate whether Ruby and Neeva Reves were on notice as to the levy, or as to what the Government's practice

---

[1] I would remand for different reasons. *See infra*.

1

is concerning the notification of codepositors in this context. As the parties are free to address this issue on remand, the dissent's concerns on this score . . . are decidedly premature.

*Id.* at 728 n. 12. In contrast to *National Bank of Commerce*, the record in this case does provide us with answers to factual questions unknown to the Supreme Court in that case.

Indeed, the controlling facts of this claim are not in dispute. First, the government admits that it levied the bank account that is at the center of this case. Second, as the government concedes, Scheafnocker sufficiently pleads an ownership interest in these levied funds: a property interest that invokes constitutional due process rights. Third, Scheafnocker states that she never received any notice from the government. Finally, the government admits that it never notified Scheafnocker of the levy. From this, it is clear that Scheafnocker has presented sufficient allegations to ground a claim that the levy was unconstitutional for purposes of procedural due process analysis. *See Finberg v. Sullivan*, 634 F.2d 50, 56 (3d Cir. 1980). Indeed, I would hold that it is irrelevant whether the bank statements were sent to Scheafnocker. All they would indicate, after the fact and possibly too late to take action, is that someone had snatched the funds. It would not provide any information about the nature of the taking or the process that is available to challenge the levy. In contrast, a Notice of Levy is prospective in nature, alerting the co-owner that the government has taken control of assets and will convert them, absent objections. It would also inform the

2

co-owner of the established procedure that is available to object to the levy.

In my view, all that remains here is a legal determination: whether the government's failure to notify Joanne Scheafnocker of the levy violated her constitutional right to due process. I conclude that it does, and in the interest of judicial economy we should proceed to the merits of her claim.

With regard to the merits of this case, there is a clear facial contradiction between the government's total failure to apprise Scheafnocker of the levy and the fundamental constitutional right to '"notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."' *Nu Look Design, Inc. v. C.I.R.*, 356 F.3d 290, 295 (3d Cir. 2004) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In the face of such a glaring incongruity, the government does not provide any legitimate reason for its practice. Its assertion that it is not authorized to notify non-taxpayer co-owners of the levy is incorrect. The wrongful levy process is set out in 26 U.S.C. § 7426 and 26 U.S.C. § 6343, separate from the levy process provisions, which delegate authority to the Secretary to make determinations about wrongful levy claims. [2] As a result, the

---

[2] "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy . . . (d) Requirement of notice before levy.--(1) In general.--Levy may be made under subsection (a) upon the salary or wages or

3

most that can be said is that the statute is silent with respect to the provision of notice to non-taxpayer co-owners about the levy and their right to challenge it.

The government also errantly argues that Congress expressed its intent to place the burden of discovering the levy upon the co-owner.[3] The government reasons that the nine-month statute of limitations applicable to the wrongful levy process, 26 U.S.C. § 6532(c), can be read to infer a Congressional intent to impose a burden of diligent oversight on

---

other property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy." 26 U.S.C. § 6331. The lack of mention of notice to non-taxpayer co-owners is not, of itself, evidence of a Congressional intent to withhold authority to notify such parties.

[3] "(c) Suits by persons other than taxpayers.--(1) General rule.--Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action. (2) Period when claim is filed.--If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter." 26 U.SC. § 6532.

the co-owner, rather than a duty of notice on the government, because nine months is long enough for a co-owner to discover the levy. *See Dieckman v. United States*, 550 F.2d 622, 624 (10th Cir. 1977). I do not find support for this inference and, moreover, I do not agree with it. Constitutional due process strictures may sometimes be onerous. That, however, does not empower the government to ignore them. "[I]t does not follow that the State may forego even the relatively modest administrative burden of providing notice by mail to parties who are [able to monitor their assets]." *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 799-800 (1983).

The Supreme Court said the following in reference to notice by publication, a method of notice that at least requires a modicum of effort on the part of the government to provide information to stake holders.

> "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

*Schroeder v. City of New York*, 371 U.S. 208, 212-213 (1962) (quoting *Mullane,* 339 U.S. at 318). Such reasoning is all the more compelling in a circumstance such as this where the government is claiming that it does not have any affirmative duty to notify a co-owner of an asset it intends to take.

Indeed, the very fact that Congress explicitly crafted section 7426 as an exception to sovereign immunity

5

demonstrates, in my view, a Congressional resolve that—even in light of the pressing need for a quick, efficient process to collect back taxes—the levy process would not run rough-shod over legitimate property interests of non-taxpayer co-owners.[4] For these reasons, I would hold that the government's position, reading the statute as eschewing any need or obligation to affirmatively provide notice of the levy to non-taxpayer co-owners, is constitutionally untenable.[5] Mindful that due process is a constitutional guarantee, not a "legislative grace" (*Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)), I read the statute as vesting the Secretary with the responsibility of deciding claims of wrongful levy in a manner that is consistent with all constitutional mandates, including notice. The statute, as written, does not run afoul of the constitution.

However, on the question of whether the government has implemented the statute in a manner that is consistent with constitutional guarantees, I conclude that it has not. The government relies upon comments to the regulation as authority for its current practice. Yet, from my review, the only definitive

---

[4] *See also Terrell v. C.I.R.*, 625 F.3d 254, 257 (5th Cir. 2010) (Internal Revenue Service must use "reasonable diligence" to provide notice to "innocent spouse" of opportunity to appeal denial of relief from an assessment.).

[5] Where differing interpretations of a statute are possible, we must read it to preserve its constitutionality. *Forum for Academic and Institutional Rights v. Rumsfeld*, 390 F.3d 219, 229 n.8 (3d Cir. 2004); *see also Rust v. Sullivan*, 500 U.S. 173, 190 (1991).

6

exclusion of notice to non-taxpayers is found in the regulations implementing section 6331, the tax levy process, where it states the following: "Q-A1. Who is the person to be notified under section 6330? A-A1 . . . A pre-levy or post-levy CDP [collection due process] Notice . . . will be given only to the taxpayer." 26 C.F.R. § 301.6330-1(a)(3). The regulations do not separately address the wrongful levy process, leading me to question whether, even here, any authoritative basis exists for the government to refrain from providing notice to non-taxpayer co-owners.[6] Nonetheless, taking the government's argument at face value, I conclude for the reasons that follow that its implementation of the statute does not conform to the mandates of due process.

---

[6] Although the official comment to the regulation narrows notice of the levy only to taxpayers, we note that the regulations are, at best, ambiguous on co-owners of levied assets. Beyond the taxpayer, the only persons explicitly discussed in the regulations are "known nominees of, persons holding property of, or persons holding property subject to a lien with respect to, the taxpayer." *See* 26 C.F.R. § 301.6330-1(a)(3)(Q-A2, A-A2; Q-B5, A-B5). The regulations make clear that these persons will not receive either notice or any due process hearing. *Id.* While the affirmative statement in A-A1 of the regulation delineates who will receive notice, the complete failure of the regulations to affirmatively and specifically reference co-owners of levied assets, or to cross-reference section 7426, is a lacuna that casts doubt on whether the rights of co-owners were considered when the procedures were constructed.

"[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Specifically, three factors are examined.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Here, the first prong is satisfied because there is no real dispute that ownership of funds in a bank account is a property interest that is subject to constitutional due process protection. *See, e.g., Finberg,* 634 F.2d at 56.

Regarding the second prong, the facts of this case provide a patent demonstration of the danger created by the present wrongful levy scheme. Scheafnocker became aware of the levy fourteen months after it occurred, well after the statute of limitations for a wrongful levy claim had tolled. As a result, unsurprisingly, all of her subsequent attempts to challenge the levy were deemed barred. Scheafnocker, therefore, was not only

8

deprived of the funds in her bank account as a result of the government's levy, but also denied any process by which the merits of her challenge to the levy could be heard. Because the government admits that it does not, and will not notify non-taxpayer co-owners of levied assets, the risk of erroneous deprivation is apparent and ongoing.

With respect to the third prong, the usual arguments employed against burdening the government's tax collection efforts with additional procedural requirements are not applicable here. Notice would not hamper the government's tax collection efforts in any way because, as noted in *National Bank of Commerce*, the levy process established in section 7426 is provisional. The levy itself does not vest the government with an ownership interest. Rather, it is an extraordinary measure—as an alternative to the normative judicial process—in which the government wrests control of the asset from the taxpayer to prevent any subterfuge that would place the property out of the reach of the government. The disposition of ownership of the asset is not conclusively determined until after the period for a wrongful levy challenge has expired. *National Bank of Commerce*, 472 U.S. at 721. Therefore, providing notice to co-owners that their property has been provisionally seized under emergent circumstances would not delay the levy, nor would it forestall the date upon which the time bar for a wrongful levy closes, because the statute of limitation to challenge the levy runs from the date of the levy. 26 U.S.C. § 6532(c).

For all of these reasons, and with all three prongs of the *Mathews* analysis satisfied, I conclude that both governmental and public interests support a holding that the administrative procedures at issue here are constitutionally infirm. The failure

9

of the Internal Revenue Service to provide any notice of the levy to Joanne Scheafnocker, a non-taxpayer co-owner of property levied pursuant to section 6331, violated her constitutional right to due process.

Lastly, the government argues in the alternative that, even if the lack of notice is a constitutional violation, Scheafnocker's delay in filing her complaint before the District Court eliminates any argument that her claim was timely. This is, essentially, a harmless error argument.

The government notes that, in the Taxpayer Advocate's denial of Scheafnocker's original request for assistance, there was notice of her right to appeal to the District Court, along with a recitation of the statutes dictating the time-frame in which this appeal must be filed. Scheafnocker, instead, filed her appeal with the Tax Court. It was only after the Tax Court dismissed her appeal that she filed a complaint with the District Court. This filing occurred outside of the statutory time limit, even if the date on which the statute began to run is calculated from the day on which she filed the Taxpayer Assistance Order, IRS Form 911, with the Taxpayer Advocate. 26 U.S.C. § 6532(c). The government argues, as a result, that Scheafnocker cannot claim that she suffered any harm from the original lack of notice.

The fundamental problem with this argument, however, is that the government's original failure to give Scheafnocker timely and appropriate notice of the levy prevented her from receiving any review or hearing on the merits of her wrongful levy claim. Therefore, the after-the-fact notice of her appeal options that she received in the Tax Advocate's denial of her

10

claim is of no consequence to our analysis. Her claim was already fatally undermined by the statute of limitation, a point that was made clear by the decision of the District Court. Given the centrality of the lack of notice to the subsequent failure of her wrongful levy claim, an error that precluded any review of Scheafnocker's claim on the merits, this constitutional violation cannot now be deemed harmless. *See Loui v. Merit Systems Protection Board,* 25 F.3d 1011, 1014 (Fed. Cir. 1994).

For all of these reasons, I would vacate the decision of the District Court and remand this cause for a hearing on the merits of Joanne Scheafnocker's wrongful levy claim.

11